Taft, J.
The question to be determined is whether Van Meter, by reason of what he was doing for Rogers as hereinbefore described, was, within the meaning of Section 4923.02, Revised Code, “engaged in the business of private carriage of * * * property * * * or of providing or furnishing such transportation service, for hire, in or by motor-propelled vehicles * # * over any public highway.”
In order to bring him within the foregoing statutory language, we must find that, in doing what he was for Rogers, Van Meter was “engaged in the business” so specified.
In a broad sense, a servant, while engaged in the business of his master, may be said to be engaged in business. Thus, it might be said that any truck driver employed for money to drive a truck carrying property, even though so employed as the servant of another, is “engaged in the business of private carriage of * * * property * * * or of providing or furnishing such transportation service, for hire.” All parties concede that the statutory language cannot be given so broad a meaning. This is probably because, where one is employed to do something as a servant for another, the doing of that something by such servant is generally regarded as something being done by the master rather than as any activity of the servant. See Derrick v. Commonwealth, 122 Va., 906, 95 S. E., 392, L. R. A. 1918D, 284. The master retains control of, or the right to control, the mode and manner of the servant’s doing of the work that he is employed to do. Councell v. Douglas, 163 Ohio St., 292, 126 N. E. (2d), 597. Hence, it is reasonable to consider the doing of such work in the mode and manner directed by the master as something being done by the one in control thereof and, if it relates to the business of the master, as part of the business of the master rather than as any business of the servant.
On the other hand, where one is employed by another to do something and the relationship of such one to his employer is that of an independent contractor, then the doing of that something is generally regarded as something being done by the independent contractor. Where the relationship is that of employer and independent contractor, the employer has not retained control of, or the right to control, the mode and manner of doing the work contracted for. Hence, it is reasonable to *397 consider the doing of snch work in the mode and manner determined by the independent contractor as being definitely an activity of the independent contractor who is in control thereof.
Without a driver, a truck cannot move. For this reason, the furnishing and providing for a monetary consideration of a truck, of the maintenance and repair therefor, of insurance with respect to its operation, and of fuel, oil, other materials, equipment and accessories necessary for its efficient operation, without furnishing or providing a driver, cannot be an engaging “in the business of * * * carriage of * * * property or of providing or furnishing of such transportation service, for hire,” within the meaning of those statutory words. See Motor Haulage Co. v. United States, 70 F. Supp., 17 (affirmed without opinion, 331 U. S., 784, 91 L. Ed., 1815, 67 S. Ct., 1205). See also annotation, 7 A. L. R. (2d), 456, 468 et seq. Where, however, a driver is also furnished, then there may be an engaging in such business. See 7 A. L. R. (2d), supra, 472. However, whether there is will depend in a particular instance upon the relationship between the driver of the truck and the one to whom the truck and driver are furnished; and what that relationship is will necessarily depend upon the facts. If the driver, while driving, is “in every respect # * * a servant of” the one to whom the truck is leased (as stipulated in the instant case), then his operation of the truck is part of the business of the lessee and not an engaging-in business by the driver or someone else. In such an instance, it cannot be said that even a driver-owner of the truck is “ engaged■ in the business of private carriage of * * * property * * * or of providing or furnishing such transportation service” within the meaning of the statutory words hereinbefore quoted. See 7 A. L. R. (2d), supra, 470, 471. If anyone is engaged in such business, it is the master who is in control of the mode and manner of operating the truck. It may be noted that all parties apparently concede that one, who is carrying his own property or providing or furnishing transportation for it, is not engaged in such “business * * * for hire” within the meaning of the statutory words.
The foregoing analysis and conclusions are supported by decisions which have dealt with similar problems.
Earle, Collector of Internal Revenue, v. Babler, 180 F. (2d), *398 1016, involved a statute providing for a tax on “amounts paid to a person engaged in the business of transporting property for hire. ’ ’
In the court’s opinion by Orr, Circuit Judge, it is said:
“Appellees, who were general contractors * * * required the transporting of bulk construction materials from stockpiles and quarries to the job sites. To carry out this transportation, appellees entered into verbal agreements with various owners of trucks for the use of their trucks on an hourly, load or yard-mile basis. * * # The Commissioner of Internal Revenue levied the tax on the theory * * * that the truck owners were persons engaged in the transportation of property for hire within the meaning of the statute. * * *
“We think * * * that it is established that the truck owners were not ‘person[sJ engaged in the business of transporting property for hire,’ in the sense of carrying on an independent enterprise * * *.
‘ ‘ The main fact relied upon by appellant as evidence of the truck owners’ independent-contractor status is the method by which they were paid. In most instances, irrespective of whether payment was by the hour, load or yard-mile, not only gas, oil and repairs were deducted from the compensation paid for the use of the truck, but also the regular wages and ‘payroll insurance’ (social security taxes, etc.,) of the drivers, which had been disbursed by appellees. Owners who drove their own trucks were usually paid wages which were later deducted from the truck ‘rental,’ although in a few instances driver-owners were paid a flat hourly rate for themselves and the truck without deductions. This financial responsibility for all supplies, repairs and drivers’ wages caused that remuneration of the owners to vary with the efficiency of both vehicles and drivers and thus tended, it is urged, to give them the character of individual businessmen. Each owner, furthermore, held a permit from the Oregon Public Utilities Commission of a kind issued to operators, as distinguished from owners, of trucks on the public highway, and carried the liability insurance required of the holders of such permits.
“* * * The drivers were subject to the will and control of appellees as to how the work should be done as well as what *399 should be done. The drivers were told where to spot their trucks for loading and unloading and what routes to take. Their times of arrival and departure were recorded and each detail of the work was supervised. The right to discharge the drivers, whether owners or not, at any time, existed. And owners and drivers were at liberty to quit at any time * * *.
“The actual work of hauling done under the close supervision of appellees and their representatives and the lack of control on the part of owners over where, when or how the hauling work should be performed points up the employer-employee relationship. Another important factor is the payment of overtime to owner-drivers. We think such payment is not consistent with the independent contractor idea. On the contrary, such a requirement usually exists in cases where the employer-employee status is maintained.” (Emphasis added.)
In Motor Haulage Co., Inc., v. United States, supra (70 F. Supp., 17), the case was heard by a three-judge court. It is said in the opinion:
“* * * The commission * * * found that even when plaintiff turned the driver and truck over to a ‘lessee’ who then used that vehicle for its own purposes prescribing routes, there still remained a ‘presumption’ of control by the plaintiff which brought it within the category of a contract carrier under the act.
“We are confident that the commission was right in its determination. * * *
6 i # * *
“We see no inconsistency in a finding that plaintiff, even though without responsibility to the shipper, is still so far in control of the movement that it is engaged in transportation under the act. * * *
it# # #
“* * * But plaintiff says the * * * limitation imposed upon it * * * that vehicles assigned to shippers must be driven by ‘employees’ of plaintiff, will prevent it from supplementing its own equipment by renting from some other trucking concern vehicles driven by employees of the lattter. * * * we believe that plaintiff could hire such vehicles and still remain within the order complained of, because undoubtedly the driver of .the *400 hired vehicle would be the ‘employee’ of plaintiff, ad hoc at least, under its method of operation.” (Emphasis added.)
In Watson Manufacturing Co., Inc., Common Carrier Application, 51 M. C. C., 223, it is said:
“In determining whether the lease of equipment to the shipper with the driver furnished is for-hire carriage * * * it is necessary to ascertain who has control of the vehicle.” (Emphasis added.)
See also Cobb v. Harrington, 144 Tex., 360, 190 S. W. (2d), 709, 172 A. L. R., 837; Lloyd A. Fry Roofing Co. v. Public Service Commission, 338 Mich., 544, 61 N. W. (2d), 783; Griffin v. Murphy et al., Board of Railroad Commrs., 51 S. D., 50, 211 N. W., 804; Setter Bros., Inc., Common Carrier Application, 51 M. C. C., 559; Bizzoso, Contract Carrier Application, 10 Federal Carrier Cases (C. C. H.), 168, paragraph 32,935; United States v. Rhodes, 97 F. Supp., 468; R. N. G. Commercial Auto Renters, Inc., Contract Carrier Application, 11 Federal Carrier Cases (C. C. H.), 553, paragraph 33,522.
Several of the cases cited by complainant and by the commission in support of the order of the commission merely represent determinations that, under the facts involved therein, the lessee did not have control of the vehicle or of the manner or mode of its operation. See for example Georgia Truck Systems, Inc., v. Interstate Commerce Commission, 123 F. (2d), 210 (“no control whatever was exercised over the drivers or over the hauling by the shippers [lessees] ”); Interstate Commerce Commission v. Isner, 92 F. Supp., 582 (“[lessee] at no time had sole possession and control of the leased motor vehicle equipment * * *. It was * * * [lessor] who retained control”); Re Frank Ferens (Pennsylvania Public Utility Commission), 58 P. U. R. (N. S.), 525 (“we * * * consider the element of control vital in our determination * * * and find that * * * [lessor] is the party in whom such right of control and direction rests”); Interstate Commerce Commission v. Gannoe, 100 F. Supp., 790 (“it is not clear who directed and controlled the actual operation of the vehicles * * *. There is a strong presumption that * * * the owner-driver controlled the operation and care of the tractor-trailer which he drove. *' * * A strong inference .arises that he retained authority to. direct the manner in which *401 his equipment should be cared for, driven and managed. In the opinion of the court, he dominated the actual operation of the trucks”); United States v. La Tuff Transfer Service, Inc., 95 F. Supp., 375 (as to contention that lessor “did not furnish and control * * * the truck driver, while he was driving the vehicle on the outbound trip which was leased” under a one-way lease, it was stated “this contention is definitely disproved * * *. [The driver] * * * was at all times the overall employee and agent of [lessor] * * *. The theory * * * that * * * the driver * * * automatically becomes the servant * * * 0f * * * [lessee] for * * * the one-way outbound trip lease and reverts back to being the employee and agent of * * * [lessor] upon the completion of the outbound trip, for further leasing to and driving of the truck for other shippers or carriers, is a fiction”).
In view of the stipulation in the instant case ‘ ‘ that in every respect * * * Van Meter has been at all times a servant of * * * Rogers * * * and that for every legal, as well as all other purposes, a master-servant relationship has existed between * * * Rogers * * * and * * * Van Meter,” it is apparent that the above cases cannot support the order of the commission in the instant case.
Although the reasoning in Public Service Commission v. Lloyd A. Fry Roofing Co., 219 Ark., 553, 244 S. W. (2d), 147, tends to support the contentions advanced by complainant and the commission in the instant case, there are substantial differences between the facts of that case and those of the instant case. Also, we recognize that reasoning similar to that of the Arkansas court was used in the opinions of some of the cases relied upon by complainant and the commission but which we have hereinbefore mentioned as having been decided substantially upon a determination that their facts indicated the lessees did not have control of the vehicles or of the manner or mode of their operation. However, in our opinion it is more reasonable to make the determination, as to whether a driver-owner of a leased truck is not “engaged in the business of private carriage of * * * property * * * or of providing or furnishing such transportation service, for hire,” dependent upon whether he is driving his truck as a servant of the lessee of the truck (i. e., upon whether the lessee has control of the mode and manner of *402 operating the truck) than to make such determination dependent upon the other guides used by the Arkansas court. Otherwise, we would be recognizing that, in leasing his truck to Rogers and providing Rogers with everything he agreed to provide for under the lease and in driving a truck carrying property of Rogers as a servant of Rogers, Van Meter would not be “engaged in” such “business,” except where he happened to drive his own truck. We have difficulty in understanding why that coincidence should supply a reasonable basis for making the doing of what Van Meter did amount to engaging in such business.
Complainant argues further in effect that the General Assembly, having stated in Section 4923.02 A(l), Revised Code, that “private motor carrier” should “not include any # * * person * * * engaged * * * as a private owner or operator of motor vehicles employed or used by a private motor carrier, or by a” common carrier, indicated an intention that “private motor carrier” should include a person engaged as a private owner or operator of vehicles employed or used by someone other than a private motor carrier or a common carrier; and those statutoy words, “private motor carrier,” therefore include Van Meter because he was such an owner and “operator.” Such an argument will necessarily lead to such obviously unsound results as to clearly indicate its fallacy. For example, the word “or” appears between the word “owner” and the word ‘ ‘ operator. ’ ’ Therefore, this argument leads to the conclusion that a mere owner of a motor vehicle “employed or used” for hire by a shipper in carrying his property is a private motor carrier. As hereinbefore pointed out, unless such owner also drives or furnishes a driver for the vehicle, he can not come within the statutory definition of such a carrier. Furthermore, if “operator” is construed to include not only one employed as an independent contractor but also one employed as a servant (unless so construed, it would not include Van Meter), then this argument leads to the conclusion that a compensated servant, driving a truck owned by his master and carrying property owned by his master, is a private motor carrier. All parties concede that he is not.
Complainant further contends that, if the order of the commission is not affirmed, then truck owners will be permitted *403 to do what Van Meter was doing for Rogers without complying with the insurance and safety requirements for private motor carriers, and the public will thereby be deprived of the protection which those requirements would provide. A similar argument might be made with respect to the desirability of having such requirements for shippers engaged in transporting their own property in their own vehicles. However, such arguments should be addressed to the General Assembly. This court has the authority to determine what the General Assembly meant by what it said; but it has no power or authority in the guise of doing that to add to legislation something which was not enacted as legislation by the General Assembly.
As observed by the dissenting member of the Public Utilities Commission, the facts are stipulated and simple; and the issue is resolved by him in the following equally simple but cogent language:
“Clearly, had Van Meter sold his truck to the Ralph Rogers Company and had subsequently been hired as an employee by the Rogers Company to operate the truck formerly owned by him there would be no question as to whether * * * said service would constitute transportation service for hire within the meaning of Section 4923.02 of the Revised Code. The only difference existent herein is that Van Meter leased his truck to the Ralph Rogers Company. However, under a bona fide lease the same general incidents of ownership such as possession, control, responsibility, etc., vest in the lessee as do under a sale and transfer of all the title and interest in the property in question # * # 3 >
Our conclusion is that the order of the Public Utilities Commission is unreasonable and unlawful and must therefore be-reversed.

Order reversed.

Weyganbt, C. J., Matthias, Hart and Stewart, JJ., concur.
Zimmerman and Bell, JJ., dissent.