## UNITED STATES v. STEFFKE.

### No. 7105.

District Court, D. Minnesota, Fourth Division.

Dec. 16, 1940.

Clair M. Roddewig, Sp. Asst. U. S. Atty., of Minneapolis, Minn., and John W. Graff, Asst. U. S. Atty., of St. Paul, Minn., for plaintiff.

Boileau & Loeffler, of Wausau, Wis., for defendant.

258

JOYCE, District Judge.

This proceeding came before the court on an information filed against Wesley A. Steffke by the United States District Attorney for the District of Minnesota on the 10th day of June, 1940, charging said defendant in forty-three counts with violations of the Motor Carrier Act, Title 49 U.S.C.A. § 306 (a), which prohibits a common carrier by motor vehicle from engaging in the transportation of property for the general public in interstate or foreign commerce for compensation, without there being in force with respect to such carrier a certificate of public convenience and necessity issued by the Interstate Commerce Commission authorizing such operations.

To the information the defendant entered a plea of not guilty. The case was tried before the court on November 7 and 8, 1940, defendant having specifically waived the right to have the case tried by jury. The case was tried under a stipulation of facts and the taking of oral testimony, and numerous exhibits were introduced.

It appears that with reference to many of the counts the defendant is charged as a second offender, he having heretofore in this court entered a plea of guilty for infractions of the same Act prior to January 19, 1940.

The evidence indicates that the defendant, who had acquired a line of customers in the operation of his motor vehicle transportation system between Wisconsin and Minnesota points, in an effort to preserve this business, sought to make an arrangement with the Ziffrin Truck Line, Inc., of Indianapolis, Indiana, whereby he could retain his business and have it apparently carried on by the Ziffrin Company, which also possessed rights into the Twin City territory in Minnesota.

It is the contention of the defendant that there was an unwritten agreement entered into on the 18th day of January, 1940, and that a further arrangement was made pursuant to a written lease on the 19th day of January, 1940, whereby the defendant as lessor leased to the Ziffrin Company as lessee, two motor truck tractors and two semi-trailers of 20,000 pounds capacity each, upon certain conditions enumerated in the lease, viz.: that the lessee, the Ziffrin Company, was to operate the vehicles with capable drivers and was to pay such drivers and that they were to be under the sole control and direction of the lessee; that the vehicles covered by the terms of the agreement were to be in the exclusive possession and control of the lessee, the lessor's obligation being to pay for their maintenance and repair with the lessee binding himself to keep the vehicles in good operating condition. There were also provisions for automatic renewals of the agreement for periods of thirty days each unless ten days' written notice was given of intention to cancel. The defendant's position was further defined in the testimony with reference to the unwritten agreement to the effect that the Ziffrin Company was to take over the operation and that freight bills were to be stamped with the Ziffrin Company's name and that the defendant personally was to act as the agent of the Ziffrin Company and make certain advances as they became necessary, for which Ziffrin was to be billed.

On the 19th of January, 1940, when the lease referred to was signed, the parties met at the Palmer House in Chicago where a conference was had and from there they proceeded to the office of the jurisdictional representative of the Interstate Commerce Commission, Mr. Purse. The defendant contends that certain of the details of the taking over by the Ziffrin interests of the truck operations into the Twin Cities, such as terminal facilities, questions of schedules, etc., were discussed. Mr. Purse affirmatively denied any such conversation taking place before him, as did his assistant Mr. Snodgrass, both these gentlemen saying that the only matter discussed was the subject matter of the lease for the equipment referred to. Mr. Ziffrin testified to like effect and likewise denied that such matters were discussed at the meeting on the 18th of January.

There is no dispute that both the defendant and the Ziffrin Company had Twin City terminals of their own and that after the making of the lease referred to they continued to operate them as theretofore save for the stamping of the Steffke freight bills with the Ziffrin name. The personnel remained as before and no instructions were ever given by Ziffrin to any of his officers or employees as to any new arrangement being made, nor was their business conducted on any new basis. All matters of solicitation, problems of transportation, rates, etc., were separately handled as before. Testimony of

traffic managers of various concerns showed that they dealt with Steffke and not with Ziffrin. There were no statements of account ever sent by Steffke to Ziffrin, Steffke testifying that they didn't amount to anything as they operated at a loss for the period involved. He further testified that his books disclosed that Ziffrin owed him $2,500, which he claims is past due, although he never demanded payment at any time therefor and no statement thereof was ever supplied Ziffrin. The testimony showed that the defendant was paying the drivers and that they were reported to the various supervising state agencies as Steffke employees. Identification plates were left on the equipment, and in fact it appears that no delivery was ever made by the lessor of the trucks involved under the lease. Ziffrin denied that he ever gave Steffke any authority to advance money for him or that he discussed this subject with the defendant on the 18th of January in Chicago. Mr. Beth, the Minneapolis representative of the defendant, testified that there was no change in any manner as to the handling of the business; that he was directed by Steffke and paid by him, and that he was never in any manner advised or controlled by Ziffrin. The witness testified that on one occasion during the period involved he put in a claim before the Wisconsin Commission for unemployment compensation as a Steffke employee. Mr. Fickett, Ziffrin's Minneapolis manager, testified that when he heard Steffke was using Ziffrin's name, his ignorance of any changed basis of operations was shown by his calling Mr. Beth and asking him where he got the authority so to do. All the receipts of Steffke's operation went to Steffke and if his contention could be regarded as correct, the same principal had two organizations in the Twin Cities operating at the same time.

I am convinced beyond any reasonable doubt that the motive compelling the defendant's course was to keep the Steffke trucks in operation and that the plan he resorted to was nothing more than a subterfuge to accomplish such result, and that he operated without authority. Ziffrin cannot be said to have engaged in the "operations" charged in the respective counts of the information when Steffke retained possession of the vehicles, controlled their movement and employed the drivers.

 A carrier cannot do indirectly what he cannot do directly. He cannot engage in any interstate operation without a certificate of public convenience and necessity or other authority from the Interstate Commerce Commission allowing such operations, by attempting to make himself into another carrier having such certificate or authority. Likewise a carrier cannot perform unauthorized operations by attempting to make himself into a private carrier through the instrumentality of an equipment lease. If a carrier leases his vehicles to another carrier or to a shipper he should do so under such terms and conditions as will make the operations conducted by such vehicles the operations of such other carrier or shipper; otherwise the operations will be his.

The judgment of the court on the individual counts is that the defendant is guilty of knowingly and wilfully engaging in interstate operations without possessing a certificate of public convenience and necessity issued according to law, and that on counts 1 to 19, inclusive, and each thereof, he shall be fined the sum of one hundred dollars ($100), and on all the remaining counts 20 to 43, inclusive, he shall be fined the sum of one hundred fifty dollars ($150) on each thereof.

An exception is accorded the defendant.