### GEORGIA TRUCK SYSTEM, Inc., v. INTERSTATE COMMERCE COMMISSION.

#### No. 10034.

Circuit Court of Appeals, Fifth Circuit.

Nov. 4, 1941.

T. Baldwin Martin, of Macon, Ga., for appellant.

Leo H. Pou, Atty., Interstate Commerce Commission of Atlanta, Ga., Francis A. Silver, Atty., Interstate Commerce Commission, of Washington, D. C., and J. Saxton Daniel, U. S. Atty., and G. B. Everitt, Asst. U. S. Atty., both of Savannah, Ga., for appellee.

Before FOSTER, HUTCHESON, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

Proceeding under provisions of Part 2 of the Interstate Commerce Act,[1] and particularly under Section 222(b) thereof,[2] appellee brought this action to restrain appellant from transporting or engaging in the transportation of property by motor vehicle in interstate or foreign commerce on public highways without a permit, in violation of the act.

Defendant admitting that it had no permit and insisting that it was solely and exclusively engaged in the business of renting or leasing trucks, denied that it was or had been engaged in transporting property for hire. On the issue thus joined, the cause was submitted upon the pleadings, a stipulation of certain facts and the testimony of witnesses. These showed without dispute that Davis, its president, and substantially the sole owner of defendant corporation, is and for some time has been, a contract carrier by motor vehicle in interstate commerce, doing business under the name of the Davis Truck Line, under an I.C.C. permit. This permit authorized him to engage as such in the transportation of interstate shipment of groceries in truck load quantities from Savannah to certain named points but not any other. Under this permit, Davis had contracts with five companies. He also operates as a motor carrier for hire in intrastate commerce under a permit from the State of Georgia. In the fall of 1939, by reason of the restriction placed upon him by the laws of the State of Georgia, limiting him to three contracts, or by reason of other intrastate considerations, Davis, to quote from his counsel, "got to the place where he couldn't carry on under those contracts * * * and so the idea was conceived of forming a corporation", and the Georgia Truck System, Inc., was formed in order that Davis could "go to renting trucks so as to get hauling to do." When this corporation was organized, Davis practically abandoned hauling under his permits. Shortly after the corporation was formed, it entered into written contracts with H. V. Kell Company and 17 other Georgia companies, whereby it agreed to rent undesignated motor trucks to each company as was required. It is the operations under these contracts which appellee insists are transportation operations by appellant in interstate commerce, and appellant insists are operations by its lessees, its concern with the matter ending with the leasing of the trucks.

We think it may not be doubted that if the evidence supports appellant's view that its business was confined to simply renting trucks for use by others, appellant would be right in its insistence that it was not engaged in transportation within the invoked act. We are equally without doubt however, that the evidence in this case affirmatively establishes that appellant's business is not so confined. On the

[1] 49 U.S.C., Chapter 8, § 301 et seq., 49 U.S.C.A. § 301 et seq.

[2] 49 U.S.C. § 322(b), 49 U.S.C.A. § 322 (b).

contrary, though its operations have been to some extent invested with the form of a renting or hiring business, this investiture is but a device or subterfuge behind and under which appellant, in substance and in reality, operates a transportation business. It is true that the contracts, under cover of which the operations were conducted, are in most of their provisions carefully drawn to give color to appellant's claim of renting only, and if the operations had been conducted strictly within that form, there might have been some question whether the operations so conducted were transportation operations within the invoked act. When, however, the contracts are read in the light of the construction accorded them by the parties by the actual operations[3] under them, it is clear that the scheme as a whole is a mere subterfuge, an unpermitted evasion, not a real avoidance of the provisions of the law. In the argument much refinement was indulged in, much speculation was raised, many authorities cited,[4] as to how close one might approach the line of transportation without being regarded as having stepped over it. We need not indulge here in any of these refinements. It is sufficient for us to say that the invoked statute is a highly remedial one, that its terms are broadly comprehensive enough to bring within them all of those who, no matter what form they use, are in substance engaged in the business of interstate or foreign transportation of property on the public highways for hire; and that the evidence admits of no other conclusion than that appellant is so engaged.

The judgment is affirmed.

[3] These operations showed that though the contract provided that the lessees should furnish the drivers, they did not do so. In form, appellant furnished a list of drivers from which lessees could select, in fact, the selection was left entirely to and was made by appellant. The pretense was that the drivers were paid by the shippers, the facts are that the shippers would draw the check payable to a named driver "or bearer" and would send that along to appellant with a check for the amount due appellant for its charges. The driver was never called upon to endorse the check and appellant with its own check paid his wages for making that trip and for other driving he had done during that period. No control whatever was exercised over the drivers or over the hauling by the shippers, and while one or two of the shippers did pay social security taxes on the wages of some of the drivers, the amounts of such taxes were charged back to Davis Truck Line, and most of the shippers did not even go through this form.

A feature of the operations is the issuance to appellant of the usual motor truck cargo policy, Carriers Form. This insures "Georgia Truck Systems, Inc., on the liability of the assured as carrier of lawful goods and merchandise, the property of others consisting principally of groceries, canned goods, sugar and general merchandise, while in due course of transit, in or on the following prescribed motor trucks, operated by assured."

Appellee insists that this is conclusive that appellant is engaged in transportation. Appellant, pointing out that in addition to insuring it as named insured, the policy also names the shippers, seeks, but without success, we think, to minimize its effect.

Thus, contrasting with the pretense that the appellant's connection with the hauling ceased with the renting of the trucks, the actual facts which showed that appellant not only furnished the trucks but every convenient service that goes with ordinary hauling for hire, including carrier cargo insurance, the evidence leaves us in no doubt that appellant was in the truck renting business in name only and in the transportation business in truth and in fact.

[4] United States v. Steffke, D.C., 36 F. Supp. 257; Goldsworthy v. Public Service Commission, 141 Md. 674, 119 A. 693; Davis v. People, 79 Colo. 642, 247 P. 801; Gornish v. Pennsylvania Public Utility Comm., 134 Pa.Super. 565, 4 A.2d 569; Reavley v. State, 124 Tex.Cr.R. 528, 63 S.W.2d 709; Entremont v. Whitsell, 13 Cal.2d 290, 89 P.2d 392.