INTERSTATE COMMERCE COMMISSION v. F & F TRUCK LEASING CO. et al. (ILLINOIS–MINNNESOTA MOTOR CARRIERS CONFERENCE, Inc., et al., Intervenors).

Civ. A. No. 2593.

District Court, D. Minnesota, Fourth Division.

June 2, 1948.

14

William P. Murphy, Asst. U. S. Atty., of St. Paul, Minn., James A. Murray and Gregory U. Harmon, both of Washington, D. C., and Herman L. Bode, of Minneapolis, Minn., Attys. for Interstate Commerce Commission, for plaintiff.

Fred A. Ossanna and Carl K. Lifson, both of Minneapolis, for defendants F & F Truck Leasing Co., a partnership, F & F Truck Leasing Co., a corporation, McLean Distributing Co., a corporation, and Sears, Roebuck and Co., a corporation.

Franklin R. Overmyer, of Chicago, Ill., and Jack N. Omvedt, of Minneapolis, Minn., for intervenors Illinois-Minnesota Motor Carriers Conference, Inc., Dakota Transfer & Storage Co., Glendenning Motorways, Inc., Merchants Motor Freight System, and Hart Motor Express.

JOYCE, District Judge.

The Interstate Commerce Commission pursuant to Section 222(b) of Part II of the Interstate Commerce Act, Title 49 U.S.C.A. § 322(b), seeks the issuance of an injunction to restrain F & F Truck Leasing Co., a corporation, from engaging in the transportation of property by motor vehicle on public highways for compensation without first having obtained a certificate of public convenience and necessity as a common carrier or a permit to engage in the business of a contract carrier as required by Section 206(a) and 209(a) of Part II of the Interstate Commerce Act, respectively. Title 49 U.S.C.A. §§ 306(a) and 309(a).

Defendant F & F Truck Leasing Co., a partnership, prior to August 19, 1947, at Minneapolis, Minnesota, was engaged in operating a truck rental business and furnishing motor equipment and drivers to shippers under single trip leases. It is not authorized to operate as a common or contract motor carrier by plaintiff. On August 19, 1947, F & F Truck Leasing Co., then a partnership, was dissolved and a corporation organized by the partners, with the identical name, and which continued the business by the same business methods formerly employed by the partnership. F & F Truck Leasing Co., a corporation, was by stipulation made a party defendant. F & F Truck Leasing Co., a partnership, and F & F Truck Leasing Co., a corporation, are hereinafter referred to as defendant. Five shipper patrons of the defendant were joined as defendants in the action, as to whom plaintiff requested a dismissal, which motion was granted.

Defendant's plan of operations in furnishing motorized truck trailer units to shippers was as follows: It owned seven trailers. This equipment is augmented by leasing from owner-operators tractors, and when needed entire tractor trailer units. This motorized equipment, tractor and trailer, it leased to its shipper patrons for use in interstate commerce under single trip written leases. The owner-operator served as the driver, or supplied defendant with a driver for the tractor. Shippers did not select or designate the drivers or the particular equipment supplied to them. Defendant frequently obtained leases from one shipper for a one-way outbound haul and at destination upon delivery of the cargo dispatched the equipment and driver for further lease to another shipper for a return haul. Rental for the equipment and for the service furnished the shipper was by agreement between defendant and shipper based on a rate formula of either (1) rates in cents per 100 pounds of property hauled, (2) a cents per truck mile rate, or (3) an agreed flat rate. Extra charges for split delivery and 3 per cent tax were frequently included. An item representing wages of the driver at 4½ cents per mile was in each instance deducted from the total sum produced by applying the agreed rate formula and paid to the driver by the shipper by separate check, less social security and tax withholding deduction. De-

fendant carried cargo insurance on the property transported, conditioned to pay any loss to the shipper, or owner of the merchandise, and a policy of public liability and property damage insurance to protect defendant and shipper as their respective interests may appear. Bills of lading or freight receipts were usually issued by the driver but often by defendant to the shipper. When the service was desired the shipper communicated with defendant and defendant then selected and dispatched the driver and equipment to the shipper's docks for loading and movement of the goods. Defendant paid the owner-operators the rental agreed upon between them for the use of the augmented equipment the difference between this sum and the total agreed freight costs to shipper, less driver's wages, represented defendant's profits. Daily driver's logs were usually delivered by the drivers to the defendant who later turned them over to the shipper. The drivers selected the highway to be traversed. The time and place of loading and points of delivery of the shipment were relayed to the drivers by the defendant except where in unusual instances special directions for multiple delivery or pickup was given the driver by the shipper. Provision of the written leases relating to selection of drivers and exclusive control of the operations was not observed by the lessee shipper. Defendant also made numerous trip leases with authorized carriers of the same equipment which it leased to shippers.

The following colloquy is significant as showing the attitude of the defendant to the relief sought by plaintiff:

"Mr. Lifson: If the court please, the defendant, F & F Truck Leasing Co., both partnership and corporation, rests. We have no desire to contend contrary to the contentions of the plaintiff in this case and are content to submit the issues in the case upon the facts that appear in the written admissions and upon the evidence that has been introduced into evidence consisting of the abstract of the trip leases and their documentation.

"The Court: I suppose that on motion the plaintiff, in the light of your statements a moment ago, is entitled to judgment of some sort.

"Mr. Bode: Your Honor, we desire an opportunity, of course, to file a brief. In that brief we expect to ask the court to issue a permanent injunction restraining the defendant, F & F Truck Leasing Co., from operating as a common or contract carrier in interstate commerce until it first obtains a certificate or permit from the Interstate Commerce Commission, and we so move, your Honor, in view of the remarks and suggestion of the court.

"Mr. Lifson: We have no objection to that.

"The Court: You are not opposing that?

"Mr. Lifson: We do not oppose that motion."

The applicable statutes are as follows: 49 U.S.C.A. § 303(a) (14), defined a "common carrier by motor vehicle", to mean:

"Any person which holds itself out to the general public to engage in the transportation by motor vehicle in interstate or foreign commerce of passengers or property or any class or classes thereof for compensation, whether over regular or irregular routes * * *."

49 U.S.C.A. § 303(a) (15) defines a "contract carrier by motor vehicle" to mean:

"Any person which, under individual contracts or agreements, engages in the transportation (other than transportation referred to in paragraph (14) * * *) by motor vehicle of passengers or property in interstate or foreign commerce for compensation."

49 U.S.C.A. § 303(a) (16) provides:

"The term 'motor carrier' includes both a common carrier by motor vehicle and a contract carrier by motor vehicle."

49 U.S.C.A. § 303(a) (17) provides:

"The term 'private carrier of property by motor vehicle' means any person not included in the terms 'common carrier by motor vehicle' or 'contract carrier by motor vehicle,' who or which transports in interstate or foreign commerce by motor vehicle property of which such person is the owner, lessee, or bailee, when such transportation is for the purpose of sale, lease,

rent, or bailment, or in furtherance of any commercial enterprise."

49 U.S.C.A. § 306(a) provides in part that:

"No common carrier by motor vehicle subject to the provisions of Part II of the Interstate Commerce Act shall engage in any interstate or foreign operation on any public highway * * * unless there is in force with respect to such carrier a certificate of public convenience and necessity isued by the Commission authorizing such operations."

49 U.S.C.A. § 309(a) provides in part that:

"No person shall engage in the business of a contract carrier by motor vehicle in interstate or foreign commerce on any public highway * * * unless there is in force with respect to such carrier a permit issued by the Commission, authorizing such person to engage in such business."

Many decisions of the courts and the Interstate Commerce Commission have passed upon operations similar in character to those here presented, and they have consistently found them to be subject to regulation. Interstate Commerce Commission v. Pickard, D. C., 42 F.Supp. 351; Georgia Truck System, Inc. v. Interstate Commerce Commission, 5 Cir., 123 F.2d 210; John J. Casale, Inc., Contract Carrier Application, 44 M.C.C. 45; United States v. Steffke, D.C., 36 F.Supp. 257; and Shields Extension of Operations-Alliance, Ohio, 41 M.C.C. 100. H. B. Church Truck Service Co. Common Carrier Application, 27 M.C.C. 191, and Motor Haulage, Inc. v. U. S. and Interstate Commerce Commission, D. C., 70 F.Supp. 17.

Substantially similar facts existed in Georgia Truck System, Inc. v. Interstate Commerce Commission, 123 F.2d 210, in which the United States Circuit Court of Appeals for the Fifth Circuit affirmed a judgment of the United States District Court which enjoined Georgia Truck System, Inc., at the suit of the Commission, from transporting property in interstate commerce without a permit from the Interstate Commerce Commission. The defendant therein admitted that it had no permit and insisted that it was solely and exclusively engaged in the business of renting or leasing trucks and denied that it was or had been engaged in transporting property for hire.

The Appellate Court said (123 F.2d page 211):

"We think it may not be doubted that if the evidence supports appellant's view that its business was confined to simply renting trucks for use by others, appellant would be right in its insistence that it was not engaged in transportation within the invoked act. We are equally without doubt however, that the evidence in this case affirmatively establishes that appellant's business is not so confined. On the contrary, though its operations have been to some extent invested with the form of a renting or hiring business, this investiture is but a device or subterfuge behind and under which appellant, in substance and in reality, operates a transportation business. It is true that the contracts, under cover of which the operations were conducted, are in most of their provisions carefully drawn to give color to appellant's claim of renting only, and if the operations had been conducted strictly within that form, there might have been some question whether the operations so conducted were transportation operations within the invoked act. When, however, the contracts are read in the light of the construction accorded them by the parties by the actual operations under them, it is clear that the scheme as a whole is a mere subterfuge, an unpermitted evasion, not a real avoidance of the provisions of the law. In the argument much refinement was indulged in, much speculation was raised, many authorities cited, as to how close one might approach the line of transportation without being regarded as having stepped over it. We need not indulge here in any of these refinements. It is sufficient for us to say that the invoked statute is a highly remedial one, that its terms are broadly comprehensive enough to bring within them all of those who, no matter what form they use, are in substance engaged in the business of interstate or foreign transportation of property on the public highways for hire; and that the evidence admits of no other conclusion than that appellant is so engaged."

In the case of United States v. Steffke, D.C., 36 F.Supp. 257, involving a similar leasing practice, the defendant had entered into a lease of certain motor transport equipment to Ziffrin Company, under the provisions of which the leased equipment was to be in the lessee's possession and under its control; but under a separate agreement the defendant, Steffke, was to act as agent of the Ziffrin Company in operation of the leased equipment. The court found Steffke actually engaged in transporting property in interstate commerce for compensation, without a certificate of public convenience and necessity having been issued to him and thereby violating the law. The Court stated, 36 F.Supp. at page 259:

"Ziffrin cannot be said to have engaged in the 'operations' charged in the respective counts of the information when Steffke retained possession of the vehicles, controlled their movement and employed the drivers. A carrier cannot do indirectly what he cannot do directly. He cannot engage in any interstate operation without a certificate of public convenience and necessity or other authority from the Interstate Commerce Commission allowing such operations, by atempting to make himself into another carrier having such certificate or authority. Likewise a carrier cannot perform unauthorized operations by attempting to make himself into a private carrier through the instrumentality of an equipment lease. If a carrier leases his vehicles to another carrier or to a shipper he should do so under such terms and conditions as will make the operations conducted by such vehicles the operations of such other carrier or shipper; otherwise the operations will be his."

In the case of Motor Haulage Co., Inc. v. United States and Interstate Commerce Commission, D.C., 70 F.Supp. 17 (affirmed 331 U.S. 784, 67 S.Ct. 1205, 91 L.Ed. 1815) the Court sustained the Commission's findings that in those cases where Motor Haulage Co. had leased vehicles to shippers under contracts disavowing carrier responsibility for the cargo transported and where it furnished drivers for the leased equipment, such operations constituted contract carriage by Motor Haulage, and not private carriage of property by the shippers.

On this feature the Court held, 70 F.Supp. page 21:

"Plaintiff says that the commission is in error in holding that its operations (in carrying without responsibility) come within the description of contract carriage. It urges that it is not a carrier at all, so far as its contracts without responsibility are concerned, because it is not a bailee of the goods but merely a lessor of the vehicle. It prefers to call its clients not shippers but lessees. The commission, on the other hand, found that even when plaintiff turned the driver and truck over to a 'lessee' who then used that vehicle for its own purposes prescribing routes, there still remained a 'presumption' of control by the plaintiff which brought it within the category of a contract carrier under the act.

"We are confident that the commission was right in its determination. Whether the legal relationship between the plaintiff and its shippers could be brought within the confines of a common-law bailment is not the important question. The real issue to be decided is whether under this particular statute the commission was right in holding, even with respect to contracts without responsibility, that plaintiff is a 'person which, under individual contracts or agreements, engages in the transportation * * * by motor vehicle of passengers or property in interstate or foreign commerce for compensation.' Interstate Commerce Act, part II, sec. 203(a) (15). We emphasize that we are not speaking of cases where plaintiff merely furnishes the equipment, and the drivers are supplied by the shippers: the commission clearly decided that plaintiff was not a common carrier where such operations are concerned (46 M.C.C. 116). We are speaking of a case where the plaintiff furnishes not only the vehicle but the driver, is compensated, on a mileage or time basis, pays the hire and other incidental expense of the driver, agrees to maintain the leased equipment in good order and repair, to carry insurance, and to garage and fuel the trucks, but does not specifically undertake to transport cargo or to be responsible for loss or damage.

"Plaintiff's argument seems to center around the question whether, when it ex-

empts itself from liability to the shipper, it ceases to be engaged in transportation as a matter of law. True, the proof is by no means clear that plaintiff conducted such operations on a wide scale prior to the grandfather clause. But assuming that it did, it cannot be fairly said that responsibility to the shipper is the sole test. Plaintiff itself cites Thomson v. U. S., 1944, 321 U.S. 19, 64 S.Ct. 392, 393, 88 L.Ed. 513, as conclusive on the point that 'direct and complete control' of the movement and handling of the freight is the test that should be applied. In the case at bar the commission has found that the 'presumption' of control by the plaintiff was not overcome by any of the evidence before it.

"We see no inconsistency in a finding that plaintiff, even though without responsibility to the shipper, is still so far in control of the movement that it is engaged in transportation under the act. Plaintiff's position in the case at bar is far more closely analogous to that of the plaintiff in the Thomson case than it is to that of the operators whom Thomson hired. It should not be necessary to analyze the legal obligations of plaintiff to determine the question whether it comes within the purview of the statute. The Commission properly refused to base its determination upon a single specific phase of the contractual relationship between plaintiff and its clients,[3] and upon all of the facts we agree with that conclusion.[4]"

"[3] Even in the field of common law liability on the part of motor vehicle owners to third parties, where control of the vehicle is in some sense of the word divided, the courts have rejected the idea that any particular incident of the legal relationship determines who is the employer of the driver. Irwin v. Klein, 1936, 271 N.Y. 477, 3 N.E.2d 601; Rumberger v. Welch, 2 Cir., 1942, 131 F.2d 384.

"[4] Plaintiff, for example, argues that control of the movement is largely in the hands of the shipper, because it selects the routes. But this, it seems to us, is not true of the procedure followed under the contract with the American Tobacco Co. nor under the contract with Liggett & Myers. These, we emphasize, are contracts with responsibility concerning which plaintiff does not challenge the finding of the Commission, at least quite as vigorously as it does in the case of contracts without responsibility. There are cases (e.g., the contract with Fritzche Bros.), where an employee of the shipper selects the routes. On the other hand, there are instances (e.g., the Colgate-Palmolive-Peet Co. contract) where plaintiff actually maintains an office on the shipper's premises and pays for it. The point we make is that if plaintiff's handling of general commodities is viewed on the facts as a whole, then it is clearly engaged in transportation and this is true in the case not only of contracts with responsibility and tonnage contracts, but also of contracts without responsibility."

In the case of Shield's, Extension of Operations—41 M.C.C. 100, the Commission decided that:

"Although * * * applicant testified that the driver of each vehicle is under the 'direction' of the manager of the store to which his truck is assigned, this 'direction' does not appear to have comprised anything more than instructions as to the points at which deliveries are to be made and the time at which a trip shall be made; such practices are natural concomitants of any contract-carrier operation devoted exclusively to the needs of a single shipper and do not necessarily imply direction and control by the shipper. The drivers and helpers are hired by applicant and, apparently may not be discharged except by him. While, in some cases, Sears pays their wages, and in others reimburses applicant therefor, this amounts to nothing more than additional compensation for applicant's service, supplementing the amounts specified in the written contract. The same is true of Sears' reimbursement of applicant for workmen's compensation insurance and social security payments. That the drivers and helpers are considered to be employees of applicant is indicated by the fact that they are so registered with the various governmental agencies. His right to control, direct, and dominate the performance of the service is further evidenced by the fact that he is contacted by telephone in the event of emergency. When any novel

problem is encountered, the drivers report it to him, presumably for instructions. Under the circumstances here disclosed, we are of the opinion that control, direction and domination of the performance of the described service rests with applicant, and that such operations constitute carriage for hire subject to regulation under Part II of the Act."

■ In the court and Commission cases the issue of whether a carrier status subject to regulation on the part of the lessor existed has been determined by how much service which goes with ordinary hauling for compensation was being furnished the shipper in addition to the leased vehicle. Also whether on the whole the dealings and arrangements between the parties indicate that a transportation service was being rendered by the lessor to the lessee rather than simply furnishing for private operation a vehicle to a shipper, and whether the vehicle was being operated by the shipper in the same manner as would normally obtain if he were the owner of the rented equipment.

■ The essential facts in this case establish the motor carrier status of defendant and disprove the operations of a truck rental activity, in that defendant (1) indirectly furnished and selected drivers for the vehicles leased to shippers; (2) made single trip one-way leases for the motor equipment to shippers, the defendant taking possession of the vehicle for further leasing to another shipper for a return haul, or after discharge of the cargo at destination; (3) assumed responsibility for the safe delivery of the cargo transported and furnished cargo insurance; (4) recognized liability for the operations of the leased vehicle on the highway and furnished public liability and property damage insurance payable to lessor or lessee as their interest may appear; (5) issued in many instances receipts or bills of lading to the shipper for the contents of the cargo hauled on the leased vehicles; (6) collected from shipper-lessee compensation for the rental of the vehicles, computed in rates in cents per each 100 pounds of property hauled or at a truck mile rate or flat rate, which sustained a relationship to normal transportation charges instead of the use of the leased vehicle; and (7) arranged for the segregation of the driver's wages of the leased vehicle on a mileage wage formula and had the shipper pay it and then credit the amount of such wages on the agreed total compensation to defendant from the shipper.

The facts further establish a motor carrier status in that (1) the lessee-shippers failed in most instances to require the drivers of the leased vehicles to deliver to them daily drivers' logs, which were instead delivered to defendant and later transmitted to the shipper; (2) the degree of control and direction over the driver, the operation of the vehicle or the rendition of the motor service was only such as any shipper would normally exercise with respect to carrier service rendered to it by a carrier by motor vehicle, and especially a contract carrier; and (3) the lessee-shippers failed to observe the provision of the written leases entered into relating to the selection of drivers.

It is the frequent practice in the motor carrier industry for carriers to augment their over-the-road equipment by leasing vehicles from owner-operators who are also employed to drive the vehicles. Owner-operators who own or control several units of equipment are in fact engaged in the truck rental business. The traffic handled in such leased equipment by an owner-operator becomes an integral part and parcel of the authorized carrier's operations. The published rates of the lessee carrier control the transportation costs to the public, and as to the operations of such leased vehicle the lessee carrier assumes full responsibility for compliance with all applicable statutes and the rules of the Commission governing the duties of the carrier to the shipper and to the public generally (Dixie Ohio Express case, 17 M.C.C. 735, 752). This practice by authorized carriers does not impair necessary public regulation. On the other hand, when, as in this case, a transportation service is in fact rendered under the guise of the leasing of vehicles to shippers, the transportation costs and rates become a subject of barter between the vehicle owner or truck rental operator and the shipper. In order to insure to the pub-

lic equality in rates and service for essential transportation, Congress enacted the Interstate Commerce Act, and if the practice of providing unregulated transportation under the guise of leasing vehicles were to become a general practice, the regulated agencies of transportation would be seriously impaired. Shippers and the public would be deprived of transportation service at equal rates and service.

Defendant under similar leases rents equipment to authorized carriers. Its operations so conducted are in furtherance of regulated transportation and not in competition with it. In this relationship factors such as selecting and furnishing drivers for the leased vehicles, or issuing bills of lading and freight receipts for the carrier, are of minor weight in determining the status of an owner-operator, whereas when leases are made for the equipment to shippers all acts and service, in addition to supplying a naked vehicle, become of controlling weight in determining the status of the owner-operator. In either case, whether the lease of the vehicle from an owner is to a shipper or to a carrier, the terms and conditions of the lease, and the manner in which it is executed, must be such as to make the operations conducted by such vehicles the operations of the shipper or carrier. United States v. Steffke, supra.

Recognition of these facts is shown by the action of the Bureau of Motor Carriers in issuing its Administrative Ruling No. 4, which reads:

"The lease or other arrangement by which the equipment of an authorized operator is augmented, must be of such a character that the possession and control of the vehicle is, for the period of the lease, entirely vested in the authorized operator in such way as to be good against all the world, including the lessor; that the operation thereof must be conducted under the supervision and control of such carrier; and that the vehicle must be operated by persons who are employees of the authorized operator, that is to say, who stand in the relation of servant to him as master."

In order for the operations to be those of the shipper as a private carrier there must be a clear and unequivocal showing that the shipper exercises control and responsibility over the operations of the vehicle, such as would be exercised by it if it were the owner of the vehicle. (Motor Haulage Company, Inc., Contract Carrier Application, 46 M.C.C. 107-118).

Under the facts as proved in this case and the law on the question involved, plaintiff has established that unless and until defendant F & F Truck Leasing Co., a corporation, obtains a certificate or a permit from the Interstate Commerce Commission, a permanent injunction should be issued: To restrain and enjoin defendant from (a) furnishing motor vehicles for compensation with drivers directly or indirectly selected by it for use of shippers to transport property moving in interstate commerce on public highways; (b) collecting compensation or rent for the operations, service and use of vehicles referred to in (a) on the basis of rates in cents per each 100 pounds of property transported; (c) making single trip one-way leases for motor vehicles to shippers and retaining possession of the vehicle for further leasing to another shipper for a return haul after discharge of the cargo first transported in the leased vehicle at destination; (d) assuming responsibility for the safe delivery of cargoes transported in leased vehicle to shippers and furnishing cargo insurance to them or carrying insurance against claims for damages for the operation of leased vehicles on the highways by shipper-lessees; (e) permitting shipper-lessees of vehicles to pay the drivers' wages of the vehicles furnished and crediting the amount of such wages on the agreed rental for the lease of the vehicle; and (f) operating as a common or contract motor carrier in transporting property moving in interstate commerce for compensation.

Findings of fact and conclusions of law in harmony herewith may be presented by the plaintiff.