William H. Dees, an individual doing business as Dees Transportation,

*Plaintiff and Respondent*

vs.

R. C. Pearce, Pearce Well Service,

*Defendant and Appellant,*

and
Corbett Contracting Corporation,
a corporation,

*Defendant.*

(No. 2777; May 21, 1957; 311 Pac. (2d) 391.)

For the defendant and appellant the cause was submitted upon the brief and also oral argument of Elmer J. Scott of Worland, Wyoming.

For the plaintiff and respondent the cause was submitted upon the brief and also oral argument of Harold Joffe of Worland, Wyoming.

Heard before Blume, C. J. and Harnsberger and Parker, J. J.

## OPINION

Mr. Chief Justice BLUME delivered the opinion of the court.

This is an action for the recovery of $4,887.81 due by reason of transporting the oil rig and accessories of defendant R. C. Pearce from Worland, Wyoming, to Duckwater, Nevada. The case was tried to a jury and the jury returned a verdict in favor of plaintiff and against defendant R. C. Pearce in the sum of $4,399.03 and costs. From that judgment the defendant Pearce has appealed to this court.

The facts are substantially these according to the evidence of the plaintiff. In the late spring of 1954,

defendant Pearce came to plaintiff Dees, who was doing business as Dees Transportation, and promised to pay Dees the amount of transportation charges when and after the oil rig and accessories of defendant were delivered to Duckwater, Nevada. The delivery to the latter place is not questioned. The plaintiff Dees had a permit to transport goods in the State of Wyoming but did not have a permit to transport goods in interstate commerce. He did not have an I.C.C. permit. He however, expected to fulfill his contract to transport the goods to Nevada by means of and with the aid of the Corbett Contracting Corporation which had an I.C.C. permit. Judging from the evidence herein the defendant Pearce had knowledge of that fact. Accordingly, Dees Transportation and Corbett Contracting Corporation entered into the following contract:

"THIS AGREEMENT ENTERED INTO this 29 day of June 1954, A.D., by and between Dees Transporation, first party, and CORBETT CONTRACTING CORPORATION, second party.

"WITNESSETH:

"WHEREAS, first party is the owner of the equipment described on the list hereto attached and made a part hereof, and second party to lease said equipment, it is AGREED AS FOLLOWS,

"TO WIT:

"That the above mentioned equipment owned by first party is hereby leased unto second party.

"As compensation for the use of said equipment when being used by second party, second party shall

pay first party 90 per cent of second party's published tariff on each particular load hauled, or xxx per xxx.

"Second party shall employ all drivers and helpers used in connection with the operation of said equipment, and shall compensate said employees, who shall be employees of second party and not of first party, but all compensation paid i n connection therewith shall be charged back to first party.

"Second party shall pay all road tax accruing against said equipment on account of any operation by second party, to be deducted from said compensation; first party shall likewise maintain the proper licenses required by law on the above mentioned equipment.

"Second party shall have charge of all purchases, fuel, lubricants, or other commodities used in the operation of said vehicles, including public liability, property damage and cargo insurance; and likewise of the maintenance and upkeep of said equipment. All indebtedness incurred or moneys paid out by virtue of this paragraph to be charged back to first party and deducted from the above mentioned rental.

"This agreement shall be for a period of six (6) months from date and thereafter until terminated by mutual consent of both parties, or by written request of either party, and may be terminated at any time prior to such time by mutual consent or by written request of either party upon 10 days notice to the other party, and to such boards or commissions as may be required.

"IT IS FURTHER AGREED THAT second party shall have the right to the exclusive use of said equipment during the period of this lease, and said equipment shall be under the exclusive control of second party while being used by him.

"IN WITNESS WHEREOF, the parties have hereto set their hands the day and date first above written.

"I.C.C. NO MC 113491

"/s/ Wesley Corbett

CORBETT CONTRACTING CORPORATION

SECOND PARTY

"DEES TRANSPORTATION

by /s/ W. H. Dees

FIRST PARTY"

In view of the fact that under this contract the plaintiff was to receive 90 per cent of the transportation charges and the Corbett Contracting Corporation 10 per cent, the plaintiff, after a demurrer to the first amended petition was sustained, deemed it necessary to have the Corbett Contracting Corporation made a party herein. In the second amended petition, the plaintiff accordingly claimed that the money owing from defendant Pearce was owing to plaintiff and the Corbett Contracting Corporation jointly, and asked that the latter company be made a party to the action. The court granted the request and service of summons was had upon the Corbett Contracting Corporation at Rawlins, Wyoming. That company did not appear in the action. The judgment in favor of the plaintiff was for 90 per cent of the transportation charges, and the Corbett Contracting Corporation not appearing re- covered nothing in the action—judgment was rendered against it, but in no amount.

According to the plaintiff's testimony, plaintiff Dees, while thinking the bill for payment should technically come from the Corbett Contracting Corporation, told the defendant Pearce that he would bill him direct, and testified that Pearce agreed to make payment for the transportation charges to plaintiff personally.

Plaintiff also testified that after the delivery was effected he had a conversation with defendant Pearce in which the latter promised to pay the plaintiff direct.

The defendant in his answer denied that he owed the plaintiff any money, claiming that if he owed money at all, he owed it to the Corbett Contracting Corporation. He further claimed as a defense that the oil rig and accessories were to be transported to Nevada on behalf of one Tillman and that it was agreed with plaintiff that plaintiff should look to Tillman for the transportation charges. The plaintiff denied that the jury evidently took the plaintiff's view.

## I

As heretofore indicated, the defendant Pearce contends that his goods were actually transported to Duckwater, Nevada, by the Corbett Contracting Corporation; that accordingly he does not owe anything to the plaintiff; that if he owes money he owes it to the Corbett Contracting Corporation; that furthermore the contract entered into between the plaintiff and the Corbett Contracting Corporation was illegal so that no recovery can be had by reason of the transportation of his goods to Nevada.

In order to understand this contention it is necessary to somewhat analyze the situation in this case. It may be, without deciding the point, that if plaintiff Dees, who had no permit to transport goods in interstate commerce, had undertaken to personally transport goods to Nevada, the contract would have been illegal. But he made no such contract. He undertook with defendant's knowledge to transport such goods to Nevada by means of an aid or agency of the Corbett

Contracting Corporation, which, as heretofore stated, had an I.C.C. permit and unless perchance such means or agency—a point to be considered later—was illegal, the contract between the plaintiff Dees and the defendant was enforceable. It is said in 2 Williston on Contracts, Rev.Ed., § 411, p. 1173:

"One who is subject to a duty though he cannot escape his obligation may delegate performance of it provided the duty does not require personal performance."

In the case at bar personal performance was not required. The duty to transport the goods was delegated by the plaintiff to the Corbett Contracting Corporation. So far as defendant was concerned the Corbett Contracting Corporation was merely the means by which plaintiff performed his contract, the party to whom the duty to do so was delegated. It would be of no concern to defendant what arrangements, whether that of lessor and lessee or any other, were made between the Corbett Contracting Corporation and plaintiff, unless perchance, as already mentioned, the arrangement between the Corbett Contracting Corporation and plaintiff was illegal. The defendant had no contractual relation with the Corbett Contracting Corporation. The contract in this case was made directly with the plaintiff Dees. We see no reason to say that the promise to pay for transportation involved herein directly to Dees would be illegal or that such contract would not be enforceable. If, as stated before, the arrangement made by the Corbett Contracting Corporation and the plaintiff was legal, we doubt very seriously that it was necessary for plaintiff to make the Corbett Contracting Corporation a party herein. If in a suit by plaintiff, the defendant felt he would not be fully protected, all he would need to have done was to have the Corbett Contracting Corporation made a party. This was in fact done by plaintiff Dees.

Was the means or agency employed by plaintiff Dees illegal? In other words, was the contract between the Corbett Contracting Corporation and plaintiff illegal as defendant contends? Of course, the mere fact that a franchise of the Corbett Contracting Corporation was used for the benefit of plaintiff and defendant cannot in itself be regarded illegal. An I.C.C. permit is acquired for the purpose of transporting goods for the benefit of someone else. The Corbett Contracting Corporation had an I.C.C. permit and had the privilege to transport defendant's goods to Nevada with equipment which it had bought. Why not with equipment which it had leased? Under the lease in evidence in this case, Corbett Contracting Corporation had full control of plaintiff's equipment and of plaintiff's employees. The responsibility to see that the goods were transported properly and without negligence in any way was upon the Corbett Contracting Corporation. Thus, the public in whose interest the I.C.C. permit is required was fully protected.

In the case of United States v. Steffke, D.C.Minn., 36 F.Supp. 257, 259, it is said:

"If a carrier leases his vehicles to another carrier or to a shipper he should do so under such terms and conditions as will make the operations conducted by such vehicles the operations of such other carrier or shipper; otherwise the operation will be his."

That requirement was clearly complied with in the case at bar according to the contract in evidence in this case.

In this case of United States v. La Tuff Transfer Service, D.C.Minn. 95 F.Supp. 375, 381, the court said:

"Furnishing motor trucks to shippers with drivers selected and employed by the lessor has been in a long

line of Commission decisions found to constitute the rendition of a motor truck transportation service subject to Commission regulations. In these cases the Commission found that the lessor, in selecting and furnishing a driver, in fact retained the right to control, direct and dominate the performance of the service."

In the case at bar we find no such violation as indicated in that case. The Corbett Contracting Corporation, under the lease in evidence here, had full and complete control over the equipment leased by that company and the men engaged in transporting the goods.

It is doubtless true as counsel for defendant and appellant contends that a franchise granted by the Interstate Commerce Commission is not ordinarily transferable. But in this case no such transfer was made or attempted to be made in so far as the record indicates.

On August 9, 1935, Congress passed an act defining a common carrier which is designated in 9 Interstate Commerce Acts Annotated, 1940 Supp., p. 7871, as § 203 (a) (14) and is as follows:

"The term 'common carrier by motor vehicle' means any person who or which undertakes, whether directly or by a lease or any other arrangement, to transport passengers or property, or any class or classes of property, for the general public in interstate or foreign commerce by motor vehicle for compensation, whether over regular or irregular routes, including such motor vehicle operations of carriers by rail or water, and of express or forwarding companies, except to the extent that these operations are subject to the provisions of chapter 1 of this title."

That congressional act has been construed and applied numerous times by the Interstate Commerce Com-

mission. See 10 Interstate Commerce Acts Annotated, 1940 Supp., p. 7965.

In 21 M.C.C. 694, it is stated:

"In Dixie Ohio Exp. Co. Common Carrier Application, 17 M.C.C. 735, we held that operations by owner-drivers, when under an applicant's direction, control, and responsibility, become the operations of the applicant, which is the dominant carrier. That finding is also applicable with respect to the operations involved in the instant proceedings. If the vehicles of owner-operators, while being used by applicant here, were operated under its direction and control and under its responsibility to the general public as well as to the shipper, then its operations, in which such vehicles were employed, come within the phrase 'or by a lease or any other arrangement' of section 203 (a) (14), and applicant, as to such operations, was and is a common carrier by motor vehicle."

See also Costello v. Smith, 2 Cir., 179 F.2d 715.

It is thus seen that Congress itself and the Interstate Commerce Commission have many times, impliedly at least, recognized as legal a contract such as was made between the Corbett Contracting Corporation and Dees Transportation, and the contention of counsel for defendant that the contract was illegal must be overruled.

## II

As heretofore stated, defendant claimed and testified that the contract with Dees was to the effect that one Tillman was to pay for the tranportation of the oil rig to Nevada. The court in that connection gave instruction number 10 as follows:

"You are instructed that an agent who contracts on behalf of a known and disclosed principal and within

the scope of his authority is not personally liable to the other contracting party in the absence of an agreement otherwise, or other circumstances showing that he has expressly or impliedly incurred and intended to incur personal responsibility."

Counsel for defendant however asked for instruction number B reading as follows, and which the court did not give:

"You are instructed that a contract entered into for a disclosed principal by an agent is the contract of the principal only, and an agent is not liable upon a contract which he enters into without authority from his principal or in excess of his authority unless it contains apt words to bind him personally."

The theory of this last instruction was that the defendant was without authority from Tillman to enter into a contract such as he claimed. We fail to see the application of this instruction in the case at bar. Defendant claimed, impliedly at least, that he had authority to represent Tillman. The instruction given by the court amply protected him in this connection.

It follows from what we have said that the judgment of the trial court must be and is affirmed.

Affirmed.