**INTERSTATE COMMERCE COMMISSION, Plaintiff,**

v.

**INTERNATIONAL SHIPPERS ASSOCIATION OF NEW JERSEY, INC., Vince DeWitt, Barth Smelting Corp., and International Granite & Marble Corp., Defendants.**

**Civ. A. No. 398–63.**

United States District Court
D. New Jersey.

Dec. 9, 1965.

David M. Satz, Jr., U. S. Atty., by Martin Tuman, Asst. U. S. Atty., for plaintiff, Seymour Glanzer of I. C. C., New York City, of counsel.

Richard T. Schwartz, Matawan, N. J., for Barth Smelting Corp., Harvey M. Lewin, New York City, of counsel.

S. M. Chris Franzblau, Newark, N. J., for International Shippers, Vince De-Witt and International Granite and Marble Corp.

.COOLAHAN, District Judge.

This is an action by the Interstate Commerce Commission to obtain a permanent injunction against the defendants, International Shippers Association of New Jersey, Inc., (Association) and Vince DeWitt, the Executive Director of the Association (DeWitt). In addition permanent restraint is being sought against two members of the Association, Barth Smelting Corporation (Barth) and International Granite & Marble Corp. (Granite). The action was brought pursuant to 49 U.S.C.A. §§ 42 and 322 (b). The defendants are all located within the confines of the State of New Jersey and the matter is properly before this Forum for decision.

The plaintiff contends that the defendant Association should be enjoined from transporting property in interstate and foreign commerce as a for-hire carrier by motor vehicle since such operation is in violation of 49 U.S.C.A. §§ 303(c), 306(a) (1) and 309(a) (1). They further contend that the other defendants who are members of the Association have been acting in concert and participating with the Association and its officer in the violation of the aforesaid provisions.

The defendants, Association, DeWitt and Granite, contend that a non-profit shippers association and its members is entirely exempt from economic regulation under any part of the Interstate Commerce Act, pursuant to exemption afforded by 49 U.S.C.A. § 1002(c); and that the Association falls within the definition of a private carrier of property by

motor vehicle as contained in 49 U.S.C.A. § 303(a) (17).

The defendant Barth alleges it should not be enjoined since it became a member of the Association based upon representations that only certificated carriers would be utilized to transport its property but when it became aware that such procedure was not followed it withdrew from the Association. Barth also states that no danger exists that it would in the future violate the statute.

The matter was tried before the Court without a jury and was taken under advisement to enable a thorough study of the pleadings, evidence, exhibits, stipulations and briefs submitted by the parties involved.

The Association was formed in January of 1962, with fourteen members in the original group. Since March of 1962, twelve additional members have joined bringing the total to about twenty-five of which approximately fifteen have been utilizing the Association's transportation service. These members were charged a $25.00 membership fee although evidence was presented that two or three of the members paid no fee at all. Membership was not solicited as such by the Association but applications were forwarded to those shippers recommended by members to the Association's administration. DeWitt is the administrative head of the Association and makes the bulk of policy determinations and operational decisions upon his own authority. The formal meetings and other membership functions are irregularly run.

Article V–a of the Association's By-laws provides the following:

"The purpose of this Corporation or Association shall be based on all rules and regulations of the Interstate Commerce Commission pertaining to same, enabling applicant's shipments to be assembled and/or consolidated with those of other Members of the Association and thereafter shipped in carload, truckload, or other quantity lots, properly and adequately insured, thereby securing to any Member and all Members of this Association the benefits of carload, truckload and other quantity rates, *shipped via railroad or certificated carriers, common or otherwise,* directly benefit (sic) to a transportation savings cost to the Members of this Association only, and any certificated carrier shall be entitled to propose or publish rates benefiting said Association upon application of said Association."

However, since its inception and throughout its history of between 500 and 600 shipments of member property in interstate commerce no certificated carrier was used to transport the property handled. Neither the Association nor its director currently holds a certificate of public convenience and necessity, permit or other appropriate authority issued by the Interstate Commerce Commission authorizing for-hire transportation by motor vehicle in interstate or foreign commerce. Instead the Association transported the goods in vehicles leased for the trip by the Association; employing drivers placed on the Association's payroll who worked directly for the Association during the trip. The Association in fact issued a certificate of rental to the driver certifying the described vehicle as being rented to the Association to carry merchandise of its members only and that said driver was a bona fide employee of the Association. The Association shipped to points in Pennsylvania, California, Illinois, Michigan and many other States. The shipments were composed of such varied commodities as bronze ingots, carpeting, chemicals and toilet preparations.

The member shippers of the Association were charged 3 to 5% above the Association's costs including equipment, driver and transportation expenses (tolls, licenses and insurance). However, no charge was included for office overhead or administration expense. There is no set tariff rate but prices were generally 10 to 15% lower than rates charged by

certificated motor carriers. On at least one occasion, a non-member was provided with transportation by the Association.

Title to the goods shipped always remained vested in the shipper and at no time passed to the Association. Following delivery an invoice was presented to the shipper billing the freight charge.

Defendant Barth was solicited for membership and joined the Association subsequent to its organization. However, Barth withdrew from the Association and is no longer functioning under such a shipping procedure.

The basic issue presented for determination by this Court is whether the exclusion contained in 49 U.S.C.A. § 1002(c) (1) exempts such an association as described herein from economic regulation under the Interstate Commerce Act with respect to whether it may lawfully transport property by motor vehicle in interstate commerce for compensation without having obtained a certificate of public convenience and necessity, permit or other appropriate authority issued by the Commission pursuant to 49 U.S.C.A. Chapter 8 (Motor Carrier Act).

From observation of the Association and its administration it is readily apparent that no certificated motor carriers were utilized in transporting the goods in question. This procedure is in direct conflict with the Association's stated purpose and with the state of the law, as this Court presently finds same. While Section 1002(c) exempts non-profit shippers associations from the effect of certain provisions of the Act it does not confer carte blanche authority upon such associations to operate without the properly prescribed Commission procedure.

The defendants contend that the Association does not perform its services for compensation since it is a non-profit Association. However, the case of Schenley Distillers Corporation v. United States, 326 U.S. 432, 66 S.Ct. 247, 90 L.Ed. 181 (1946) held to the contrary and found compensation on the grounds that reimbursement for expenses of operation was sufficient for this purpose. Here the Association was reimbursed for its expenses and in fact presented bills for same to its members. Consequently, in view of all the foregoing facts it is clear that the Association was engaged in the transportation of property in Interstate Commerce by motor vehicle for compensation.

The argument advanced by the defendants that the Association is a private carrier pursuant to 49 U.S.C.A. § 303 (a) (17) has been rejected by Judicial interpretation. See Shippers Cooperative, Inc. v. I. C. C., 308 F.2d 888 (9th Cir. 1962). In considering that argument the following statutes become relevant. 49 U.S.C.A. § 303(c) states in essence that no person shall engage in for-hire transportation by motor vehicle in Interstate Commerce without a certificate or permit issued by the Commission. Sections 306(a) (1) and 309 (a) (1) prohibits such operation for common carriers or contract carriers unless there is in force such a properly authorized certificate or permit. The only exception to these promulgations is the private carrier who acts in furtherance of its primary business enterprise which must be other than transportation.

The Association named as a defendant herein clearly falls within the ambit of the first cited section and does not hold a permit or other certificate. It cannot be classified as a private carrier for the reasons expressed in Shippers Cooperative, Inc., supra.

The Legislative history of the Act emphasizes that one cannot be a carrier subject to the Motor Carrier's Act and a freight forwarder and escape the prohibitions at the same time. A non-profit association of freight forwarders would be exempt. Clearly an association of carriers would not. See Shippers Cooperative, Inc., at page 891; 49 U.S.C.A. § 1002(a) (5) and United States v. Chicago Heights Trucking Co., 310 U.S. 344, 60 S.Ct. 931, 84 L.Ed. 1243 (1940). A freight forwarder hires an independent common or contract carrier. The Association defendant herein oper-

ated its own trucks without certificate and attempted to enjoy the status of a carrier without regulation. This is not only contrary to statute and judicial interpretation but is also in direct contravention to the stated Association By-laws and purposes mentioned above.

■ Part II of the Interstate Commerce Act is comprehensive enough to bring within its purview all those who are in substance engaged in a business of transportation of property on the public highways for hire. Georgia Truck System, Inc., v. I. C. C., 123 F.2d 210 (5th Cir. 1941).

■ The statute is remedial in nature and should properly be liberally construed to effect its evident purpose. McDonald v. Thompson, 305 U.S. 263, 59 S.Ct. 176, 83 L.Ed. 164 (1938).

■ The Association cannot claim exemption from the application of Part II of the Act by virtue of the Part IV exemption previously referred to. As stated above, the legislative history of the enactment (Part IV) clearly points out the line of distinction between freight forwarders and non-profit associations of shippers, such as the defendant herein. There is no aim on the part of Congress to exclude shipping associations who assume responsibility for the through movement of goods from the application of the Motor Carrier Act. The freight forwarder who is excluded from the Act does not engage in the transportation by motor vehicle. The exemption from Part IV afforded to the shipper would be lost if it crossed the line of distinction so as to be considered a freight forwarder and consequently this exemption can afford the Association no protection in an area regulated similarly for all parties.

■ In analyzing the entire picture this Court concludes that the Association and its Director was aware of the restrictions placed upon it by the stat-utes in question and operated in violation of same. The various acts described constitute violations of the above mentioned statutes and as such will be enjoined by this Court under 49 U.S.C.A. § 322(b).

The defendant Granite was a party to a prior proceeding in which a similar association was enjoined from further activity in this area. In that matter Trans-Continental Shippers Association was enjoined from performing unauthorized for-hire transportation. Both Barth and Granite were named as defendants in that action. However, the complaint against Barth was dismissed. The injunction was granted as against the Association and Granite.

■ The Commission contends that in view of the past history there is a danger that both Granite and Barth will continue to operate in the manner described above. The counsel for Barth has presented additional material to show that Barth has not only withdrawn from the Association but has taken steps to handle its shipping in a manner in accordance with proper existing Interstate Commerce Commission procedure. Consequently this Court is not convinced there is any danger of Barth continuing to operate in such a manner or that it would join an association operating in an illegal manner in the future. Furthermore, there is sufficient evidence to show that the entry into the Association by Barth was predicated upon the belief the Association would function according to its proscribed by-laws and method of operation.

In light of the foregoing it is the opinion of this Court that the defendants, Association, DeWitt and Granite will be enjoined from violating 49 U.S.C.A. §§ 303(c), 306(a) (1) and 309(a) (1). The complaint will be dismissed against the defendant Barth.

Let counsel for the Commission submit an appropriate form of injunction and order.