**INTERSTATE COMMERCE COMMISSION v. CHEESEBROUGH et al.**

**Civ. A. No. 1075.**

District Court, D. Minnesota, Third Division.

April 29, 1948.

William P. Murphy, Asst. U. S. Atty., of St. Paul, Minn., James A. Murray and Gregory U. Harmon, both of Washington, D. C., and Herman L. Bode, of Minneapolis, Minn., for plaintiff.

L. Glenn Fassett and Mulder & Fassett, all of Minneapolis, Minn., for defendants.

BELL, District Judge.

The defendant Harvey Cheesebrough (hereafter called Cheesebrough) maintains his principal place of business at Minneapolis, Minnesota. He does not have a certificate of public convenience and necessity or a permit issued by the Interstate Commerce Commission authorizing him to engage in the transportation of property as a common or contract carrier by motor vehicle and his lack of authority was at all times known to the defendant Waldorf Paper Products Company (hereafter called Waldorf).

The defendant Waldorf at all times was a corporation duly organized and existing under and by virtue of the laws of the state of Minnesota with its principal place of business located at St. Paul and was transacting business in various states including the states of Wisconsin, Iowa, and North Dakota and at all times material was engaged in the manufacture, distribution, and sale of paper products. In the conduct of its business the defendant Waldorf used carriers by rail and motor vehicle to perform the transportation services.

During the period January 1, 1943, to and including the date of the trial of this action, the defendant Cheesebrough transported in interstate commerce by motor vehicle for compensation on public highways between St. Paul in the state of

Minnesota to and from points in the states of Iowa, Wisconsin, and North Dakota a large number of shipments of property for shippers; and, pursuant to an agreement and in accordance with the method described herein, the defendant Waldorf employed Cheesebrough to transport its products.

In 1942 the defendants entered into an oral arrangement in which Cheesebrough agreed to operate one or more tractors and trailers, which he was to purchase, in the transportation of the products of Waldorf in interstate commerce from and to its plant in St. Paul. Cheesebrough since from time to time has acquired tractors and trailers and he or drivers selected and employed by him have operated these units in transporting the property of Waldorf. The equipment and services have been subject to the call and demand of Waldorf at all times. Compensation has been paid to Cheesebrough by Waldorf in the sum of approximately ten thousand dollars annually. At the time of the trial of this action Cheesebrough was operating two tractors and two semi-trailers in rendering this service for Waldorf.

Cheesebrough determined how he would conduct the physical operations. He was not subject to the orders and directions of Waldorf in the performance of services and was not carried on the records of the paper company as an employee, a laborer, or a truck driver.

Compensation was paid Cheesebrough, based and computed on rates specified in cents per each 100 pounds, for the transportation of property for Waldorf. These rates applied by Cheesebrough were generally lower than the corresponding rates of authorized common carriers by motor vehicle and were determined by Waldorf. No part of the compensation paid by Waldorf to Cheesebrough is capable of being identified or segregated as wages.

No federal income tax was withheld by Waldorf from Cheesebrough's compensation or from wages paid to drivers. The drivers were selected and employed by Cheesebrough to operate and drive the motor vehicles furnished to perform the service and Cheesebrough paid the wages.

No social security contributions were made by Waldorf for Cheesebrough, or by Waldorf for any drivers of the vehicles used during the period involved.

Cheesebrough at all times has driven and operated the motor vehicles used or employed drivers thereof at his own cost and of his own selection, and they have worked under his direction and control. He has had the exclusive physical possession and control of the motor vehicles used as well as control over the services performed.

Cheesebrough owns, houses, operates, and services the motor vehicles employed under the terms of the agreement. He pays directly, and without reimbursement from Waldorf, the entire cost of operation of the motor vehicles, such as gasoline, oil, grease, repairs and maintenance.

The state registration license plates attached to the motor vehicles were purchased by Cheesebrough at his own cost and in his own name and displayed on the vehicles, which carry no identification or other means to indicate operation thereof by Waldorf as lessee, operator or owner.

Cheesebrough, during the years 1945 and 1946 held a permit issued by the state of Minnesota to operate as an irregular route common carrier of property by motor vehicle and has operated and conducted a transportation business pursuant thereto in intrastate commerce, with an admitted gross revenue of approximately five thousand dollars annually.

Prior to entering into the arrangement with Waldorf, Cheesebrough had been engaged as a contract carrier by motor vehicle in interstate commerce under claimed "grandfather" rights as defined in Title 49 U.S.C.A. § 309(a). The application to the plaintiff, filed February 11, 1936, for a permit to operate as such contract carrier, after substitution of a corporation for Cheesebrough as applicant, which he organized and managed, was denied on June 9, 1941.

Waldorf prepared a shipper's bill of lading for each shipment hauled on the vehicles involved which was signed on behalf of Cheesebrough and a freight bill computed at rates in cents per each one hundred pounds of property hauled and was issued in the name of Cheesebrough and payment was made to Cheesebrough by

Waldorf as the whole compensation for the interstate services furnished to it by Cheesebrough. No definite time or term was fixed during which the arrangement between Cheesebrough and Waldorf was to be operative.

Prior to October 1, 1945, Cheesebrough did not comply with the Motor Carrier Safety Regulations of the plaintiff relating to the keeping and preserving of daily drivers' logs, as is required of a carrier by motor vehicle in interstate commerce, whether private or for hire.

Cheesebrough obtained public liability and property damage insurance to protect himself and Waldorf, and he paid the premium on such policies which name both parties as the insured.

The degree of control and direction exercised by Waldorf over the operation of the vehicles or the rendition of the motor service was such only as any shipper would normally exercise with respect to carrier service rendered to it by a carrier by motor vehicle, and especially a contract carrier by motor vehicle. Waldorf directed Cheesebrough when and where to deliver its shipments, to whom delivery was to be made, and required Cheesebrough to obtain acknowledgements from the consignees of the shipments on copies of bills of lading which were returned to Waldorf.

This suit is brought and the jurisdiction of this Court is invoked, under the provisions of Part II of the Interstate Commerce Act, 49 Stat.L. 543, 49 U.S.C.A. Chap. 8, § 301 et seq., and particularly of Section 222(b) thereof, 49 U.S.C.A. § 322 (b); and under the provisions of the Elkins Act, 49 U.S.C.A. § 41 et seq., and more particularly of Section 2 thereof, 49 U.S. C.A. § 42.

The defendant Cheesebrough in furnishing motor vehicles to defendant Waldorf Paper Products Co., with drivers selected and employed by him, under the individual contract and agreement between the parties, whereby he transports for Waldorf property moving in interstate commerce on public highways, and in collecting compensation for the use and operations of such vehicles on the basis of rates in cents per each 100 pounds of property transported in said vehicles is operating as a contract carrier by motor vehicle as defined in

Section 203(a) (15) of Part II of the Interstate Commerce Act, Title 49 U.S.C.A. § 303(a) (15).

The defendant Cheesebrough, throughout the period from January 1, 1943, up to and including the date of the trial of this case was and is engaged in the business of a contract carrier by motor vehicle in interstate commerce on public highways, for compensation, without there being in force, with respect to said defendant, a permit issued by the Interstate Commerce Commission, authorizing said defendant to engage in such business, and that the aforesaid acts of said defendant were and are in violation of Sections 209(a) and 222(a) of the Interstate Commerce Act, Title 49 U.S.C.A. § 309(a) and § 322(a) and as such were and are subject to be enjoined by this Court on the application and suit of the plaintiff under the express provisions of said Act, more particularly Section 222(b) thereof, Title 49 U.S.C.A. § 322(b).

Waldorf by employing defendant Cheesebrough to furnish motor vehicles to it, driven by him or by drivers selected and employed by Cheesebrough, and by causing its property to be transported in the vehicles thus operated in interstate commerce on public highways, and by paying to Cheesebrough compensation for the operation and use of such motor vehicles a compensation based in rates in cents per each 100 pounds of property transported, with knowledge of the fact that said defendant Cheesebrough does not hold a permit issued by the Interstate Commerce Comission as a contract carrier as defined in Section 209 of Part II of the Interstate Commerce Act, Title 49 U.S.C.A. § 309, has been and is participating in the unauthorized and illegal operations of said defendant Cheesebrough.

An injunction should be issued (1) to enjoin defendant Cheesebrough from continuing to transport property for Waldorf as a contract carrier by motor vehicles in interstate commerce for compensation unless and until said defendant Cheesebrough shall have obtained a permit from the Interstate Commerce Commission authorizing such interstate operations, and (2) to restrain and enjoin Waldorf from employing Cheesebrough in operating for it in interstate commerce as a contract carrier by

motor vehicle on public highways for compensation unless and until said defendant Cheesebrough shall have obtained a permit from the Interstate Commerce Commission authorizing such interstate operations.