INTERSTATE COMMERCE COMMISSION
v. ISNER et al.

Civ. A. No. 8889.

United States District Court
E. D. Michigan, S. D.

June 20, 1950.

KOSCINSKI, District Judge.

This suit is brought and the jurisdiction of this Court is invoked under the provisions of Secs. 204(a) (6) and 222(b) of Part II of the Interstate Commerce Act, 49 U.S.C.A. §§ 304(a) (6), 322(b), and under the general laws and rules relative to suits in equity arising under the Constitution and laws of the United States.

The complaint charges that defendant David Isner, a resident of Detroit, Michigan, is engaged in the transportation of property in interstate commerce by motor vehicle, for compensation, on public highways between Detroit, Michigan, and South Kearny, New Jersey, and that he is a motor carrier in interstate commerce subject to the provisions of Part II of the Interstate Commerce Act, 49 U.S.C. Chapter 8; that the defendant Valentine & Company, Inc., hereinafter called "Valentine", a Delaware corporation is engaged in the transportation and sale of goods, wares and merchandise, using and employing the services of carriers by rail and motor vehicles to perform the required transportation, including the services of defendant motor carrier, and has a joint interest with said defendant motor carrier to the controversy herein; that from May 26, 1949, to and including the date of the filing of complaint, February 3, 1950, defendant Isner transported in interstate commerce by motor vehicle, for compensation, on public highways as aforesaid, a large number of shipments of property for defendant Valentine & Company, the shipper; as particular instances of such transportation performed by defendant Isner as motor carrier for defendant shipper, plaintiff avers that on the dates specified, defendant motor carrier, as such motor carrier did transport between Detroit, Michigan and South Kearny, New Jersey, shipments of property described in said complaint, and for such transportation of each of said shipments defendant motor carrier charged, demanded, collected and received from defendant shipper the compensation set forth in the complaint without there being in force, with respect to said defendant motor carrier, a certificate of public convenience and necessity or a per-

Edward T. Kane, U. S. Atty., Roger P. O'Connor, Asst. U. S. Atty., Detroit, Mich., James A. Murray, Leo H. Pou, Washington, D. C., Hugh E. Lillie, Chicago, Ill., for plaintiff.

Pratt & Graham, Detroit, Mich., for defendants.

mit issued by said Interstate Commerce Commission authorizing said defendant motor carrier to engage in such transportation and operations as aforesaid, and that said operations and business of defendant motor carrier were without warrant and authority of law, and without any form of authorization by said Commission; and that at all times herein mentioned, said facts were well known to defendant shipper.

Plaintiff represents that such practices on the part of the defendants constitute violations of the provisions of Secs. 206(a) and 209(a) of the Interstate Commerce Act, 49 U.S.C.A. §§ 306(a), 309(a), and subject to be enjoined by this court on the application and suit of the plaintiff under provisions of Secs. 222(b) thereof, 49 U.S.C.A. § 322(b).

Defendant Isner denies the material allegations of the complaint, contending that he is not a motor carrier, but that he is simply a lessor of vehicles; that the transportation of the property was accomplished by Valentine as a private carrier; that therefore the Commission is without authority, express or implied, to regulate or authorize such operations.

The sole question involved is whether defendant Isner's operations are those of a contract carrier by motor vehicle, within the meaning of Part II of the Interstate Commerce Act, 49 U.S.C.A. § 301 et seq. If defendant Isner is such a carrier, it follows that a judgment granting the injunction should be entered; otherwise, the complaint should be dismissed.

### Findings of Fact

1. The defendant Valentine was served with process in this case on February 18, 1950. Through its counsel it arranged to extend the time of filing appearance and answer on March 3, 1950 to March 27, 1950, and again from March 27 to April 6, 1950, following which the court was informed by plaintiff's counsel that the defendant Valentine would not appear or plead in this case, and that this information was obtained from counsel representing Valentine. Accordingly, an affidavit and order of default as to Valentine was filed and entered on April 14, 1950.

2. Prior to May 2, 1949, transportation of products and supplies between the plants of defendant Valentine was performed by Long Transportation Company and Middle Atlantic Transportation Company, both of which are common carriers by motor vehicle authorized to perform such transportation by the Interstate Commerce Commission and the applicable rate on file for such transportation duly filed with the Commission was 87 cents per 100 pounds of property transported, and such transportation was also subject to the 3 per cent federal transportation tax, which made a total cost to Valentine of approximately 90 cents per 100 pounds for such transportation.

3. On May 2, 1949 Valentine entered into a leasing arrangement whereby defendant Isner leased two tractor-trailer combinations to Valentine for a period of one year for its use in transporting its products between Detroit, Michigan and South Kearny, New Jersey. Under the terms of such lease, compensation was to be paid Isner for the use of such vehicles at the rate of 83 cents per 100 pounds on all cargo transported, with a guarantee of 12,500 pounds minimum weight on all shipments moving in both directions; drivers' wages, social security, withholding tax and unemployment insurance were to be deducted by Valentine from the compensation provided, and all truck and operating expenses were assumed by Isner. The lease further provided that the drivers were to be in the employ of Valentine with right to hire and discharge them.

4. On May 20, 1949, on application of defendant Isner, the Michigan Public Service Commission issued to him a contract carrier permit, authorizing transportation of "property for Valentine & Co., Inc. between Detroit and the Michigan-Ohio state line, Interstate, Provided, that the vehicles operated under this authority shall be assigned by shipper to the carrier for the shipper's exclusive use and control." In this document there was a description of the two tractors owned by Isner, corresponding to the tractors used by him under the purported lease here.

5. Isner and Valentine were warned by a representative of the Commission that such lease arrangement was unlawful since it was a contract for carriage and should be

discontinued until authority therefor was obtained from the Commission.

6. As a result of such warning a new lease was entered into by Valentine and Isner on August 22, 1949, under the terms of which Isner was to receive $1,500 per month as rental in lieu of the 83 cents per 100 pounds of cargo transported provided in the May 2 lease, and Valentine was to pay drivers' wages, and all gasoline, oil and garage expense; otherwise the two leases were substantially identical. This was confirmed by Loren Mason, Valentine's foreman of shipping and receiving, who testified there was little difference in the handling of the transportation operations under the terms of either lease.

7. Transportation operations under the lease of August 22, 1949 extended substantially throughout a period of four months, during which time Valentine paid Isner $13,871.67, although under the lease he would be entitled to receive from Valentine but four months rent for the two tractors and trailers at the rate of $1,500 per month, or a total of $6,000. The difference between the $13,871.67 and the $6,000 was explained by Isner to be a refund to him of moneys advanced by him for oil, gas, maintenance and repairs or garage service necessitated by the operation of the vehicles covered by the lease. Isner produced a small pocket-sized "ledger" in which there appeared to be entries made by him purporting to reflect the expenses and receipts by him in the operation of the leased vehicles, covering a period from December 1948 to and including December 1949. Under "paid out" the entries for the period of the lease of August 22, 1949 included many items of tolls, gas, oil, various repairs, replacements of motor vehicle parts, and tools, all purportedly relating to operation and maintenance of the leased motor vehicles. The entries indicated that some of these expenses were paid by check, others by cash. The total of such expenses during the period of operations under the lease of August 22, 1949 amounted to $6,615.53.

8. There were no entries in this "ledger" which would in any manner indicate that Valentine was making payments to Isner in the amount of $1,500.00 per month

rental called for by the lease, or at the rate of $375 a week, as claimed by him. He failed to produce any records of Valentine which would shed any light on the financing of the transportation operations carried on under the lease, although given an opportunity by the court to do so.

9. The monthly rent payments provided under the lease cannot be reconciled with the actual payments made by Valentine to Isner during the period such lease was in force.

10. Analysis by plaintiff of weekly statements rendered by Isner to Valentine showed that except in one instance the actual charges collected represented a charge of 83 cents per 100 pounds of cargo transported, after allowances made for drivers' wages and expenses. This was the same charge made and method of operation followed under the terms of the first lease, although the rate published for such transportation by authorized motor carriers was 87 cents per 100 pounds, and, in addition, 3 per cent government transportation tax which was not being paid by either of the defendants.

11. Valentine did not operate any trucks of its own in the transportation operations between Detroit, Michigan and South Kearny, New Jersey. It did not service the leased trucks, nor did it have any transportation personnel to supervise the operations of Isner's trucks, nor did it require the drivers to maintain driver's logs or submit physicians' certificates of physical examination as required by the Motor Carriers Safety Regulations of the Commission applicable to private carriers, nor did it in anyway comply with the Commission's regulations applicable to private carriers. It did not sustain the relation of owner to the leased motor vehicle equipment as required of it under the law. Valentine failed to require the drivers of the vehicles to deliver their daily driver's logs or physicians' certificates of physical examination of drivers, as required by the Motor Carrier Safety Regulations, 49 C.F.R.Cum.Supp. 190.1 to 197.2 inclusive (5 F.R. 3900(7).

12. The drivers delivered to defendant Isner bills for repairs of the leased motor vehicle equipment, gas and oil, and for bridge tolls and long distance telephones,

and he paid such bills, not under any provisions of the lease, but under some arrangement with Valentine, which was not part of the lease.

13. All cargo turned over by Valentine to Isner and other drivers of his trucking equipment for transportation was tendered to such drivers on regular shipping order copy of a Uniform Bill of Lading in the same manner that Valentine had tendered such shipments to authorized common carriers preceding the operations under the lease of August 22, 1949. That many of these shipping orders were fictitious is glaringly evident from the following specimens:

(1) Shipping order No. 50, September 6, 1949, *50* used empty steel drums, *weight 12,500 lbs.*

(2) Shipping order No. 56, September 20, 1949, *37* used empty steel drums, *weight 12,500 lbs.*

(3) Shipping order No. 60, December 3, 1949, *35* used empty steel drums, *weight 12,500 lbs.*

(4) Shipping order No. 68, December 24, 1949, *6* used empty steel drums, *weight 12,500 lbs.*

It should be noted here that the first lease, admitted by Isner to have been unlawful, provided that Valentine guaranteed 12,500 pounds minimum weight on all return loads from Detroit to South Kearny. All four shipments described above were such return loads consigned from Detroit, Michigan to South Kearny, New Jersey. It is beyond belief that 6 empty steel drums would weigh as much as 50, or 37, or 35 similar empty steel drums. No reliance can be placed on the weight figures contained in these shipping orders. But such figures as the 12,500 pounds weight of cargo in the four shipments mentioned lend support to the plaintiff's charges that the operations were conducted on the basis of so many cents per hundred pounds of weight, and not under the lease which provided for rental of the trucking equipment of $1,500 per month.

14. During the four months of trucking operations under the second lease defendant Isner himself was the driver on not less than seven interstate trips. While he testified that he was being paid by defendant Valentine the usual wages of $37.50 per trip, there was no evidence in support of his statement either in the form of cancelled checks, statements or any records kept by him or the defendant Valentine. Nor was any such evidence available at the trial as to the employment and payment of wages to other drivers, most of whom were the same drivers who operated Isner's trucking equipment under the first lease.

15. Isner claimed that because of his need for money with which to meet expenses, the $1,500 monthly rental was paid on a weekly basis at approximately $375 per week. But in none of his weekly statements to Valentine is the figure $375 weekly rental reflected, nor was there produced at the trial any documentary evidence in support of that method of payment under the lease. A typical weekly statement is that of September 12, 1949[2]; a copy of which is reproduced in the margin.

2.

Statement
Isner Motor Freight Co.
Phone LAfayette 1870

Detroit, Mich.  Sept. 12, 1949

Valentine & Co.

| | Driver | Bill No. |
|---|---|---|
| Sept. 2 | Riddell | 49 |
| " 2 | " | 49 |
| " 6 | " | 88096 |
| " 6 | " | 14961 |
| " 6 | Cleve | 50 |
| " 8 | Riddell | 51 |
| " 9 | " | 14978 |
| " 9 | Cleve | 14966 |

Rental & Expenses

$670.95

16. The bookkeeping method of defendant Isner covering the operating transactions under the lease is confusing and unreliable, and proves one thing only, and that is, that the ledger entries do not reflect in any manner whatsoever that the trucking operations were being carried on in conformity with the lease of August 22, 1949. The most that can be said for the entries is that to all intents and purposes the parties to the lease, defendants herein, were operating not under that lease, but under an arrangement in derogation of the lease, and, as disclosed on the basis of available facts and figures, they carried on contract carriage operations.

### Conclusions of Law

1. The deliberate failure and refusal of Valentine to appear, plead and defend in this case, raises a presumption and creates a strong inference that its records of operations under the lease of August 22, 1949, would tend to support the charges of the plaintiff, i. e. that it was collaborating with defendant Isner in unlawful transportation operations, as charged by plaintiff.

2. The issue of whether a contract carrier status subject to regulation exists is to be determined in each case by how much service which goes with ordinary contract carriage for compensation was being furnished by Isner in addition to the leased vehicles; also whether, on the whole, a transportation service was being rendered by Isner to Valentine, rather than simply furnishing for private operation the vehicles to Valentine, in the same manner as it would normally obtain if it were the owner of the equipment. The facts not only negative such private carriage, but such facts show that Valentine turned over its shipments to Isner in the same manner that it did to regulated carriers herein mentioned, prior to such purported leases, and that it received its transportation for a definite fixed charge which was less than it had previously paid to regulated carriers. Interstate Commerce Commission v. F. & F. Truck Leasing Co., D.C., 78 F.Supp. 13, 20.

3. The lease of August 22, 1949 was not a bona fide lease but was a mere subterfuge under the guise of which both defendants attempted to screen their unlawful operations with the object of circumventing the laws and regulations applying to them as motor carriers.

4. " 'Contract carrier by motor vehicle' means any person which, under individual contract or agreements, engages in the transportation (other than transportation referred to in paragraph (14) and the exception therein), by motor vehicle of passengers or property in interstate or foreign commerce for compensation," 49 U.S.C.A. § 303(a) (15); and, "no person shall engage in the business of contract carrier by motor vehicle in interstate or foreign commerce on any public highway * * * unless there is in force with respect to such carrier a permit issued by the Commission, authorizing such person to engage in such business." 49 U.S.C.A. § 309(a). No such permit was in existence as to the trucking operations here involved.

5. The Motor Carrier Act of 1935 is a highly remedial statute, and its terms are broadly comprehensive enough to bring within them all of those who, no matter what form they used, are in substance engaged in the business of transportation of property on the public highways for hire. Georgia Truck System, Inc., v. Interstate Commerce Commission, 5 Cir., 123 F.2d 210, 211. As in that case so here, the evidence admits of no other conclusion than that defendant Isner is engaged as a contract carrier in transportation of property for hire in interstate commerce, and that defendant Valentine is his aider and abetter. The Act being a remedial statute, it should be liberally interpreted to effect its evident purpose. McDonald v. Thompson, 305 U.S. 263, 59 S.Ct. 176, 83 L.Ed. 164; Piedmont & N. Ry. Co. v. Interstate Commerce Commission, 286 U.S. 299, 52 S.Ct. 541, 76 L.Ed. 1115.

6. The problem of determining the legal status of lessor and lessee of motor vehicle equipment used in interstate transportation for hire under the Motor Carriers Act has been before the courts in a number of cases lately. In the recent case of Bridge Auto Renting Corporation v. Pedrick, 2 Cir., 174 F.2d 733, 737, the court said: "So it would

seem that the decision here should turn upon the correct answer to an easily stated question. Did the appellant in fact furnish substantially all the facilities for, and perform substantially all of the functions of, transporting the property of the forty-two customers whose payments to it were taxed? It is in this connection that the decisions above cited under the Motor Carrier Act, 49 U.S.C.A. § 301 et seq., are helpful by analogy. While it is true that the purpose of that Act is different and so is the language, the problem is much the same in that it requires separating the essentially important features from the non-essentials and drawing a more or less arbitrary line between complex fact situations differing but slightly. Without repeating in detail what the appellant did to earn the receipts which were taxed, it did in the aggregate all that was reasonably necessary to be done to transport its customer's property. Indeed, it is plain enough that these customers, regardless of what else they saw fit to do, had only to provide the goods for transport, direct the drivers where to take them and pay the appellant for performing the transportation service. It cannot be said that such service for pay did not make the appellant a person transporting property for hire to that extent even though in doing the greater part of its business it was otherwise engaged." Also in the following cases, and under varied conditions, Courts held lessors of trucks to be engaged in transportation for hire. Interstate Commerce Commission v. F. & F. Truck Leasing Co., supra; Interstate Commerce Commission v. Cheesebrough, D.C., 77 F.Supp. 441; Motor Haulage Co., Inc., v. Interstate Commerce Commission, D.C., 70 F.Supp. 17, Id., 331 U.S. 784, 67 S.Ct. 1205, 91 L.Ed. 1815; Georgia Truck System, Inc., v. Interstate Commerce Commission, supra; Casale, Inc., v. United States, Ct.Cl., 86 F.Supp. 167; United States v. Steffke, D.C., 36 F.Supp. 257. Of course, where lease of motor vehicle equipment is made in good faith and performance of the conditions of the lease is honestly and scrupulously carried out, such lessor and lessee relationship might be found regular and proper and not subject to regulation under the statute.

7. Here, defendant Isner has rendered transportation service to defendant Valentine under the guise of the lease of his motor vehicles. He not only has made available for the use of defendant Valentine his motor vehicle equipment, but he himself was a driver of his own motor vehicle equipment under the lease on several occasions. The insurance policies covering the operations under the guise of the lease covered both Isner and Valentine as the insured. The actual payments purportedly to be rental were computed at rates in cents for each 100 pounds of property transported, thereby sustaining a relationship to normal transportation charges instead of the use of a leased vehicle. Such failure to observe prescribed laws and regulations, in addition to the practices indulged in under the guise of the lease, negative Isner's claim that defendant Valentine is a private carrier, and that he himself is not a motor carrier.

8. Valentine at no time had sole possession and control of the leased motor vehicle equipment, nor exercised any right of ownership over such vehicles during the existence of the lease, as was necessary for it to do under the law and the terms of the lease. It was defendant Isner who retained control and exercised all rights of ownership as to the leased motor vehicle equipment, and assumed responsibility for the operation and maintenance of the leased vehicles. "Whether the lease of the vehicle from an owner is to a shipper or to a carrier, the terms and conditions of the lease, and the manner in which it is executed, must be such as to make the operations conducted by such vehicles the operations of a shipper or carrier." Interstate Commerce Commission v. F. & F. Truck Leasing Co., supra [78 F.Supp. 20]. The method of bookkeeping resorted to by defendant Isner is of no avail to him in claiming that he is not a motor carrier. On the contrary, his actions and practices in operating his trucking equipment during the period of the lease are more eloquent than his unsup-

ported protestations that he is not a motor carrier, or that defendant Valentine is a private carrier.

9. The acts of both of said defendants, and each of them, constitute violations of the provisions of Secs. 206(a) and 209(a) of the Interstate Commerce Act, 49 U.S.C.A. §§ 306(a) and 309(a), and as such, are subject to be enjoined by this court on the application and suit of the plaintiff under the express provisions of said Act, more particularly Sec. 222(b) thereof, 49 U.S.C.A. § 322(b).

## Judgment

This cause having come on for a final hearing, and the issues therein having been tried before the court without a jury and the evidence of the parties hereto having been heard, and the court having duly made findings of fact and conclusions of law; it is hereby ordered, adjudged and decreed that the defendant David Isner, his agents, servants, attorneys and privies, and each of them, are hereby permanently enjoined and restrained from directly or indirectly (a) furnishing motor vehicles for compensation with himself as driver or with drivers directly or indirectly selected by him for the use of shippers, particularly defendant Valentine & Company, Inc., to transport property moving in interstate commerce on public highways; (b) collecting compensation or rent for the operations, services and use of such vehicles on the basis of rates in cents per 100 pounds of property transported; (c) permitting Valentine to pay the drivers' wages for operating the vehicles furnished and crediting the amount of such wages on the rental for the lease of the vehicle; (d) operating as a contract motor carrier in transporting property in interstate commerce for compensation without first obtaining a permit or authority from the Interstate Commerce Commission;

It is further ordered, adjudged and decreed that the defendant Valentine & Company, Inc., its agents, servants, attorneys and privies, and each of them are hereby permanently enjoined and restrained from directly or indirectly aiding and abetting defendant David Isner in such unlawful operations as described in the preceding paragraph.

Jurisdiction of this cause is retained for the purpose of giving full effect to this judgment and decree and for the purpose of making such further and other orders and decrees, or taking such further action, if any, as may become necessary or appropriate to carry out and enforce its decree.