UNITED STATES v. RHODES et al.

UNITED STATES v. BROWN et al.

Cr. Nos. 4891, 4892.

United States District Court
W. D. Arkansas, Forth Smith Division.

Oct. 28, 1950.

Louis I. Dailey, Little Rock, Ark., for Interstate Commerce Commission.

Charles A. Beasley, Jr., Asst. U. S. Atty., Fort Smith, Ark., for U. S.

G. L. Grant, Fort Smith, Ark., for defendants.

JOHN E. MILLER, District Judge.

An information was filed in Criminal Case No. 4891 on August 2, 1950, in which the defendant, Harold Rhodes, was charged in eight counts with engaging in the business of a contract carrier and transporting canned vegetables by motor vehicle on public highways between Van Buren, Arkansas, and various points in Tennessee, Texas, Oklahoma, Florida, Kentucky and Louisiana for the defendant, Pharr Canning Company, Inc., for compensation, without having first obtained from the Interstate Commerce Commission a permit authorizing him to perform such operations, in violation of Title 49 U.S.C.A. § 309(a).

The defendant, Pharr Canning Company, Inc., is charged in each count with having knowingly and wilfully aided and abetted the said defendant, Harold Rhodes, in the illegal operations, in violation of Title 18 U.S.C.A. § 2.

In Criminal Action No. 4892, an information containing nine counts was filed on the same date, August 2, 1950, charging the defendant, Elwayne Brown, with engaging in the business of a contract carrier and transporting canned vegetables by motor vehicle on public highways from Van Buren, Arkansas, to points in the states of Kentucky, Georgia, Texas, Tennessee, Virginia, Colorado and Ohio for Pharr

Canning Company, Inc., for compensation, without first having obtained from the Interstate Commerce Commission a permit authorizing him to perform such operations, in violation of Title 49 U.S.C.A. § 309(a).

Pharr Canning Company, Inc., is charged in each count with having knowingly and wilfully aided and abetted the said defendant, Elwayne Brown, in the illegal operations, in violation of Title 18 U.S.C.A. § 2.

On September 8, the parties appeared before the Court and at that time the attorney for the defendants in both cases requested additional time before arraignment, and the cases were continued for arraignment until September 29, 1950. On that date the defendants in both cases, through their attorney entered a plea of not guilty to the charges contained in the informations and the cases were set for trial on October 11, 1950, before the Court without a jury, the parties having, with the approval of the Court and consent of the government, waived trial by a jury.

On the date of the trial the attorney for the defendants in both cases asked permission to withdraw the plea of not guilty and enter a plea of nolo contendere, which permission was granted, and a plea of nolo contendere was entered for the defendants in both cases.

Whereupon, in open court, the facts in each case were fully discussed with the attorneys representing the government and the attorney representing the defendants, and in addition thereto the Court heard testimony on behalf of the government and the defendants in each case; and, at the conclusion of the trial, the Court announced that the cases would be taken under consideration upon the facts and the plea of nolo contendere. Later, and while the cases were under consideration by the Court, the defendants filed a motion asking that they be permitted to withdraw the plea of nolo contendere and that a plea of not guilty be entered, which motions were submitted to the Court and, it appearing to the Court that the cases were fully developed upon the trial, notwithstanding the plea of nolo contendere, and that justice requires that the defendants be permitted to withdraw their pleas of nolo contendere

and that the original pleas of not guilty be re-instated, the motions were granted and said pleas of not guilty were re-instated.

Following the granting of the motion of defendants to withdraw their pleas of nolo contendere the Government requested that an additional hearing be held for the purpose of the introduction of additional testimony by it, which request was granted, and the cases were set for further hearing on October 27, 1950, at which time the Government introduced the testimony of Mr. C. C. Gunn, a business man of Van Buren, Arkansas; Ray L. Shuey, Investigator for the Interstate Commerce Commission; J. E. Buckalew, Bookkeeper of the defendant corporation; and also recalled for further examination D. R. Partney, a representative of the Interstate Commerce Commission; together with photostatic copies of certain records, which were introduced as Government's exhibits Nos. 7, 8 and 9.

No order of consolidation of the cases for trial was entered but the cases were in fact tried together, and all the facts in both cases were fully developed in the trial. There is no substantial dispute of any material fact in either case, and while the parties have not made a request for the facts to be found specially, the Court is of the opinion that the facts should be found specially and, in order to avoid confusion, the Court now proceeds to consider both cases at the same time but finds the facts specially and separately in both cases and separate judgments will be entered.

## Findings of Fact
### In Criminal Action No. 4891

1

The defendant, Harold Rhodes, on December 3, 1949, was the owner of certain motor equipment consisting of a Ford Tractor and Hobbs Trailer. On that date he undertook to and did transfer the title of the Ford Tractor to Charles Pendergrass and presented the said bill of sale or assignment to the defendant, Pharr Canning Company, Inc. Whereupon, the defendant, Pharr Canning Company, and the said Charles Pendergrass entered into certain truck lease agreements, which agree-

ments were introduced in evidence. At the time the leases were entered into the said Charles Pendergrass did not have a permit or certificate issued by the Interstate Commerce Commission authorizing him to engage in the business of a contract carrier by motor vehicle in interstate commerce. This fact was known to the defendant corporation. These agreements are all similar except as to dates and provide that the lessor, Charles Pendergrass, leases and lets the motor equipment therein described, being the Ford Tractor and Hobbs Trailer, to the lessee, Pharr Canning Company, Inc., for a definite term. Inter alia the lease agreements provided:

"4. The use to which said equipment is to be put is the hauling or transportation of the canned fresh vegetables of lessee and/or any other legal commodities whatever which it may elect to haul.

"5. Lessee, of course, agrees that it will employ and pay the drivers of said trucks for their services, pay all charges for gas, oil, grease used in the operation and use of said equipment, and the liability insurance for the time covered by this lease, as well as commodities insurance, and that it will be responsible for the negligence of the operators in the operation, and it will be responsible for the safety of its merchandise hauled.

"6. Lessor, however, as a part of his services, agrees to furnish all repairs or upkeep expense on said equipment for and during the said period of this lease, except only such as may be necessitated or required because of negligence of the lessee, its agents, servants and employees.

"7. Lessee agrees that it will, at the termination of this lease, restore or return said equipment to the lessor in as good condition as the same is now in, ordinary wear and tear from usage being however excepted, and also damage not caused by the lessee, its servents, agents or employees.

"8. Lessor warrants that he will keep said equipment in repair, that is, covering all ordinary repairs which may be required, and that he will keep the equipment lubricated and maintained."

**2**

After the leases were executed, the defendant, Pharr Canning Company, Inc., employed the defendant, Harold Rhodes, as a driver, and the said defendant, Harold Rhodes, as such employee drove the equipment in the transportation of the canned vegetables on the trips described in the various counts in the information. The defendant, Rhodes, was paid a compensation of 3¢ per mile as driver and Charles Pendergrass, as owner of the equipment, was paid 8¢ per mile for the use of the motor equipment. The defendant, Pharr Canning Company, Inc., fully complied with the provisions of the various leases and, in addition to the compensation paid the driver, the defendant, Harold Rhodes, the defendant, Pharr Canning Company, Inc., paid all the expenses of said driver except the cost of his room at hotels or tourist cabins. The motor equipment, while being used in the transportation of the vegetables, was under the complete control of the defendant corporation and its employee, the defendant Rhodes, and none of the expenses of the operation of the motor equipment paid by the defendant corporation was charged to Charles Pendergrass, as owner, or the defendant, Rhodes.

**3**

The plaintiff introduced exhibit No. 7, which is a photostatic copy of a settlement between the defendant corporation and the said Charles Pendergrass for the month of February, 1950, in an effort to establish that the equipment was in fact being operated by the defendant Rhodes and that the expenses of the operation were charged by the defendant corporation to the account of Charles Pendergrass. The testimony of Mr. Goodwin Pharr, the President of the defendant corporation, as well as the Bookkeeper, Mr. J. E. Buckalew, is positive that the only expenses charged to Pendergrass were those that were authorized to be charged under the terms of the written leases, and while the method of keeping the account seems obscure and confusing, yet, the court does not think that exhibit No. 7 or the testimony of the representatives of the Interstate Commerce Com-

mission establishes that the defendant corporation charged any expenses to the account of Pendergrass other than those which Pendergrass agreed to pay by the terms of the leases.

### 4

The canned vegetables moved in interstate commerce as the property of the defendant corporation, and no one exercised any control over the equipment in the transportation of such canned vegetables except the defendant corporation through its employee, the driver Harold Rhodes.

### 5

Without the knowledge or consent of the defendant, Pharr Canning Company, Inc., the defendant Rhodes required Charles Pendergrass to deliver to him the checks received from the defendant, Pharr Canning Company, for the use of the motor equipment, and a portion of said checks were applied by the said defendant Rhodes to the payment of the balance of the purchase price which he owed on the equipment at the time he transferred the Ford Tractor to the said Charles Pendergrass.

No part of the amount paid defendant Rhodes as an employee of defendant, Pharr Canning Company, or any part of the costs of transportation were charged back against the rental of the equipment and there is no testimony tending to prove that the transportation was not in fact the operation of the defendant, Pharr Canning Company, except the fact that defendant Rhodes was at the time the owner of the Hobbs Trailer, but during the operations charged in the information he had no more control over it than any other employee of the corporation.

### 6

The defendant Rhodes made other trips as the employee of the defendant corporation with other equipment not owned by Pendergrass, and other employees of the defendant corporation during the time covered by the information in this case also made trips for the defendant corporation and drove equipment owned by the corporation as well as motor equipment leased from other owners. The employment of the defendant Rhodes as a driver by the defendant, Pharr Canning Company, Inc., was not a subterfuge to put Rhodes in charge of the equipment and he was at all times under the control of his employer, the defendant, Pharr Canning Company. The defendant Rhodes delivered the vegetables to the various parties as set forth in the various counts of the information and took from the consignees receipts showing such delivery by the defendant, Pharr Canning Company, Inc.

### 7

The defendant, Pharr Canning Company, Inc., is a corporation organized and existing under the laws of the State of Arkansas and engaged in the canning, processing and sale of various vegetables. It owns motor equipment which it uses to transport its own products, except at times when the business is such as to require the use of additional equipment owned by other persons.

The motor equipment leased from Pendergrass, when in use by the defendant corporation, was in the actual possession of the defendant corporation, but during the times the equipment was not needed by the said defendant corporation it was usually kept at the home of the defendant Rhodes and Pendergrass and may have been used by either of them at sometime during the term of the various leases.

### 8

The lease is for a definite term, December 3, 1949, to June 3, 1950, and the lease provides that the consideration "to be paid for said lease is computed upon a mileage basis of actual use of said equipment, that is, eight (8) cents per mile". Thus, under the terms of the lease the defendant corporation was not to pay anything for rental except while the equipment was in actual use by the defendant corporation, and the amount of the compensation was to be determined by the number of miles which the equipment was driven.

## Findings of Fact

## In Criminal Action No. 4892

**1**

The defendant, Elwayne Brown, is a resident of the Town of Alma, in Crawford County, Arkansas, situated about thirteen miles from the place of business of the defendant corporation at Van Buren, Arkansas. He owns various motor equipment and entered into leases in all respects similar to the leases entered into between the defendant corporation and Charles Pendergrass except as to dates and the description of the particular motor equipment. At the time the leases were entered into between defendant Brown with the defendant corporation, he did not hold a permit or certificate issued by the Interstate Commerce Commission authorizing him to engage in the business of a contract carrier by motor vehicle in interstate commerce. This fact was known to the defendant corporation.

**2**

The drivers of the leased equipment at the times set forth in the information were regular employees of the defendant, Pharr Canning Company, Inc., and were paid as such employees a weekly wage. The two employees that operated the motor equipment were James Adams, who is now in the Navy, and James Aldridge, who is now in the Army, and they were not present as witnesses, but they were not employed by the defendant corporation for the specific purpose of driving the leased equipment but for general work and were merely used as drivers because of their proficiency in such work.

**3**

The Government introduced exhibits Nos. 8 and 9, exhibit No. 8 being a photostatic copy of a settlement sheet between the defendant corporation and the defendant Brown for the month of December, 1949, and exhibit No. 9 being a photostatic copy of the settlement sheet between the defendants for the month of January, 1950. These exhibits were introduced by the Government in an effort to establish that the defendant corporation made deductions from the compensation provided in the leases and to be paid by the defendant corporation to the defendant Brown for the use of his equipment. In other words, the Government contends that the expenses of the drivers of the trucks were charged to the defendant Brown.

The testimony of Mr. Goodwin Pharr and J. E. Buckalew, President and Bookkeeper, respectively, of the defendant corporation, satisfactorily explains the entries attacked by the Government, as being payment of charges for gas, oil and grease used in the operation and use of the equipment which were inadvertently charged to the defendant Brown by the filling stations, and which, according to paragraph 5 of the leases, were to be paid by the defendant corporation. Also, under paragraph 6 of the leases the defendant corporation was required to pay for all repairs to the equipment that were necessitated or required because of the negligence of the corporation or its employees.

The entries on the settlement sheets complained of by the Government are somewhat confusing, but the positive testimony discloses that there were in fact no deductions made from the compensation paid by the defendant corporation to the defendant Brown for the use of the equipment on account of the salaries paid to the drivers or expenses incurred by the drivers while engaged in the business of driving the equipment.

**4**

Each of the leases was for a definite term and provided that the compensation to be received by the lessor was to be determined upon a mileage basis of use of said equipment by the lessee, the defendant corporation.

It appears from the testimony that the equipment was not required continuously by the defendant corporation during the term of the leases, and during such times the defendant Brown was permitted to retain the equipment in his possession and it was used by the said Brown in other work during such times, but during the term of the leases when the equipment was required by the defendant corporation it was operated in strict accordance with the terms

474

of the leases. The testimony does not disclose any bad faith on the part of the defendants or either of them, and the extent and kind of operation engaged in by them was as disclosed by the various leases executed by them, the terms of which are identical with the terms of the lease set forth in Finding of Fact No. 1 in Criminal Action No. 4891.

## Discussion

It is the contention of the Government that the leases executed by Pendergrass and by the defendant Brown were mere subterfuges to evade the provisions of the statute which require permits or certificates to authorize one to act as a contract carrier of goods in interstate commerce and that the defendants, Brown and Rhodes, actually controlled the equipment and operations at all times. It relies upon the case of Interstate Commerce Commission v. F & F Truck Leasing Corporation, D. C. Minn., 78 F.Supp. 13, and other similar cases as authorities that require the conviction of the defendants in both cases. The F & F Truck Leasing Corporation case, supra, was a civil suit for an injunction. The opinion was written by Judge Joyce and discloses a careful and thorough investigation of the adjudicated civil cases arising under the statute in question. In the course of the opinion Judge Joyce, in quoting from some of the adjudicated cases, on page 17 of 78 F.Supp., said: "A carrier cannot do indirectly what he cannot do directly. He cannot engage in any interstate operation without a certificate of public convenience and necessity or other authority from the Interstate Commerce Commission allowing such operations, by attempting to make himself into another carrier having such certificate or authority. Likewise a carrier cannot perform unauthorized operations by attempting to make himself into a private carrier through the instrumentality of an equipment lease. If a carrier leases his vehicles to another carrier or to a shipper he should do so under such terms and conditions as will make the operations conducted by such vehicles the operations of such other car-

rier or shipper; otherwise the operations will be his."

The testimony and the facts disclose that the operations of the motor equipment in both of these cases were conducted in strict accordance with the written leases and in such a manner as to make the operations in fact and in truth the operations of defendant, Pharr Canning Company.

These are not cases where the lessor, owner of the equipment, furnished not only the vehicle but the driver and was compensated on a mileage or time basis; paid the hire and other incidental expense of the driver; agreed to maintain the leased equipment in good order and repair, and to carry insurance and to garage and fuel the trucks. The lessors did not specifically undertake to transport cargo and to be responsible for loss or damage. Rather they are cases where the owners merely furnished the equipment. The drivers were supplied by the lessee, the defendant corporation. The drivers were paid by the lessee corporation and all expenses were paid by the lessee, and as specifically stated in the leases, all charges for gas, oil and grease used in the operation were paid by the lessee. Public liability insurance on the vehicles for the time covered by the leases was furnished by the lessee. The merchandise that was transported was insured by the lessee and the lessee was responsible for all negligence of the drivers and operators of the equipment as well as for the safety and the delivery of the merchandise.

It is difficult to conceive of anything else that the defendant, Pharr Canning Company, could have done that it did not do to give it full and complete control of the operation of the motor equipment.

Judge Joyce further stated on page 19 of 78 F.Supp. of his opinion, Interstate Commerce Commission v. F & F Truck Leasing Corporation, supra: "In the court and Commission cases the issue of whether a carrier status subject to regulation on the part of the lessor existed has been determined by how much service which goes with ordinary hauling for compensation was being furnished the shipper in addition to the leased vehicle. Also wheth-

er on the whole the dealings and arrangements between the parties indicate that a transportation service was being rendered by the lessor to the lessee rather than simply furnishing for private operation a vehicle to a shipper, and whether the vehicle was being operated by the shipper in the same manner as would normally obtain if he were the owner of the rented equipment."

No service of any kind was furnished by the lessors to the lessee except the use of the leased vehicles and the actual owner of the leased vehicles had no control of any kind in the operation of the motor equipment while it was being used under the leases by the lessee.

Judge Joyce further stated on page 20 of 78 F.Supp., in referring to Motor Haulage Company, Inc., Contract Carrier Application, 46 M.C.C. 107–118: "In order for the operations to be those of the shipper as a private carrier there must be a clear and unequivocal showing that the shipper exercises control and responsibility over the operations of the vehicle, such as would be exercised by it if it were the owner of the vehicle."

The case of Interstate Commerce Commission v. Isner, decided June 20, 1950, D.C.E.D.Mich., 92 F.Supp. 582, was a civil suit for an injunction. In the opinion, 92 F.Supp. at page 588, the court said: "Of course, where lease of motor vehicle equipment is made in good faith and performance of the conditions of the lease is honestly and scrupulously carried out, such lessor and lessee relationship might be found regular and proper and not subject to regulation under the statute."

In an effort to sustain its chief contention, that the leases were mere subterfuges to evade the law, the Government argues that since the defendant corporation did not retain at all times during the term of the leases the actual physical possession of the equipment, that the leases were disregarded and nullified by the acts of the lessors and the lessee. The facts reflect that the trucks were not used every day during the term of the leases, but they were always subject to the call of the lessee, the defendant corporation, and the mere fact that the lessors may have had actual possession of the trucks during certain days of the term of the leases is not sufficient to vitiate the leases, especially in view of the fact that the only revenues received by the lessors from the lessees were those which were paid them when the equipment was being used by the lessee. It is a matter of common knowledge that in the operation of motor equipment ordinary repairs are needed constantly and no doubt upon the return of this equipment to Van Buren after having been driven hundreds and sometimes thousands of miles on a trip it was necessary for the lessors to make repairs and such repairs could not have been made unless the possession of the trucks was delivered to the lessors for that purpose.

The Government likewise contends that the settlement sheets indicate that the parties disregarded the provisions of the leases, but such contention is not sustained by the testimony. It is true that the manner of bookkeeping could be improved upon, but the settlement sheets are not sufficient to overcome the positive testimony of witnesses who know what actually occurred in the operations.

The Government further argues that the statute is highly remedial and should be liberally construed to accomplish its purpose. That rule should be and is followed in cases where the Commission is seeking an injunction to compel compliance with the provisions of the statute, but these are not cases of that nature. Here the defendants are charged by the Government with a criminal offense. They are presumed to be innocent of any offense until the testimony introduced by the Government proves their guilt beyond a reasonable doubt. The proof introduced by the Government falls far short of convincing the court of the guilt of these defendants beyond a reasonable doubt. On the other hand, the facts disclose that the leases were executed in good faith; that the terms of the leases were honestly and scrupulously carried out by the parties; and at all times during the actual operations under the leases the defendant cor-

poration had complete control of the motor equipment and the operation was in truth and in fact that of the defendant corporation.

Therefore, the defendants in both cases are not guilty of the offenses charged in the informations.

### Conclusions of Law
### In Criminal Action No. 4891

1

The court has jurisdiction of the parties and the offenses charged in the information.

2

The defendants are not guilty as charged in the information and judgment of acquittal should be entered herein.

### In Criminal Action No. 4892

1

The court has jurisdiction of the parties and the offenses charged in the information.

2

The defendants are not guilty of the charges contained in the information and judgment of acquittal should be entered.

Separate judgment in accordance with the above should be entered in each case.